# Richmond

HENRY W. MASON, ET ALS. v. T. R. LAMB.

April 25, 1949.

° Record No. 3469.

Present, All the Justices.

The opinion states the case.

*Eastwood D. Herbert*, for the plaintiffs in error.

*Louis Lee Guy*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Henry W. Mason, Betty C. Mason, Mark A. Scott and Clara B. Scott, partners trading as Mercury Roller Rink, hereinafter called the plaintiffs, brought an action at law against the defendant, T. R. Lamb, seeking compensation for damages done to their building and to their business by surface water which it was alleged the defendant, in filling in a depression or low area on his lot, had wrongfully deflected onto the plaintiffs' land.

The notice of motion contained two counts: (1) that the defendant, in filling in his lot, had "obstructed" the natural flow of the surface water "in a wanton, unnecessary and careless manner," causing it to "backup" and accumulate on the property of the plaintiffs; and (2) that the defendant had raised the level of his lot above that of the adjoining land and had graded the fill down to the line of the plaintiffs' property, thereby negligently and unnecessarily pouring a great volume of surface water upon the plaintiffs' property.

At the trial, after the plaintiffs had concluded their testimony, the court sustained a motion to strike the evidence and a verdict and judgment for the defendant necessarily followed. To review this action of the trial court the present writ has been awarded.

The properties involved, and those adjacent thereto, lie in Norfolk county, just beyond the eastern boundary line of the city of Norfolk. The attached plat will illustrate the location of the various properties to which reference will be made.

On August 23, 1944, Henry W. Mason, one of the plaintiffs, acquired title to a lot of land, which, as will be seen from the diagram, fronts 131.49 feet on the southern side of Taussig boulevard. Shortly thereafter he constructed thereon, at the cost of approximately $90,000, a large roller-skating rink. He also leased as a parking lot a 60-foot strip of land just to the east of the property. This was the first improvement in the area. On August 15, 1946, title to the property was taken in the names of the plaintiffs as partners.

Subsequent to the construction of the skating rink the

lots to the west were cleared and buildings were erected thereon by the Standard Oil Company, Beard, Parks, and Norfolk Monument Company, respectively.

On August 31, 1946, the defendant, Lamb, acquired the large vacant lot to the south and west of the plaintiffs' property. At that time there was a depression or low area

located mainly on the Lamb property but extending in a northeasterly direction across the southeastern corners of the Parks and Beard lots and the southwestern portion of the Mason lot. The rain or surface water from the adjacent properties drained into this depression and stood there much of the time. Occasionally, by reason of heavy rain, the depression would be filled and excess water then drained eastwardly across the rear of the Mason property to the open ditch which is the eastern boundary of the Mason parking lot. By reason of a slight fall this ditch drained northward into a storm sewer which runs along the southern side of Taussig boulevard.

Soon after acquiring the property Lamb, with a view to building thereon, began to fill in that portion of the depression or low area which was on his lot. When this filling was begun Henry W. Mason, one of the plaintiffs, went to see Lamb and expressed some concern that the fill would cause the rain water to accumulate in that portion of the depression which was on the Mason, Beard and Parks properties, and overflow into or under the Mason building. Mason suggested that Lamb cut a ditch eastwardly across the rear of the plaintiffs' lot so as to carry the water from this diminished lower area to the drainage ditch to the east of the plaintiffs' property, as shown on the map. But no steps were taken to accomplish this and Lamb proceeded with the filling and grading of his lot.

Upon the completion of the fill the surface of the Lamb lot, at its highest point, was approximately one foot higher than that of the adjacent lots. Consequently, while some of the rain water which fell on the Lamb lot drained westwardly toward Granby street, much of it ran northeastwardly into that portion of the depression which remained on the properties of Beard, Parks and Mason.

In May, 1947, a heavy rain caused the surface water to accumulate in this depression and overflow in such volume as to flood the floor of the skating rink. The amount of water entering the building at that time was not great and no damage was done. Mason again notified Lamb of the

situation and they, together with Parks, made a tentative agreement to install a catch basin in the depression and lay a drain pipe along the western side of the Mason property northward to the storm sewer on Taussig boulevard. But before this could be accomplished,[1] there was a heavy rain in July which caused the water to accumulate in the low area along the southwestern side of the skating rink and to get under the floor, thereby causing the considerable damage which is the subject of this suit.

However, not all of the water which caused this damage came from the Lamb lot. A portion of it came from the properties and buildings of Parks, Beard, Norfolk Monument Company, and from the roof of the large skating rink itself. This latter building has a floor space of 24,000 square feet and a roof of corresponding size. The evidence is undisputed that four downspouts along the western side of the large building empty onto the ground. This water, which formerly drained into the low area on the Lamb property, is now impounded in the depression which remains on a portion of the properties of Parks, Beard, and that of the plaintiffs.

■ In this jurisdiction we have adopted what is known as the modified common-law rule or common enemy doctrine with respect to surface water.[2] Under this rule surface water is considered a common enemy and each landowner, in the improvement or protection of his property, may fight it off as best he can, subject to the qualification that he must exercise his rights, not wantonly, unnecessarily, or

---

[1] The record discloses that subsequently these facilities were installed and have corrected the trouble complained of.

[2] Under the civil-law rule, except as to urban property, the upper proprietor has an easement to have surface water flow naturally from his land onto the land of the lower proprietor, and hence the latter has no right to obstruct its flow and cast the water back upon the land above. 56 Am. Jur., Waters, section 68, p. 550; *Idem*, section 78, p. 565.

Under the common-law rule, or common enemy doctrine, as strictly applied, surface water is a common enemy which every proprietor may fight as he deems best, regardless of its effect on other proprietors. 56 Am. Jur., Waters, section 69, p. 552.

See also, *McGehee* v. *Tidewater R. Co.*, 108 Va. 508, 509, 510, 62 S. E. 356; 15 Va. Law Rev. 288.

carelessly, but in good faith and with such care as not to injure needlessly the property of the adjacent owner. See *Norfolk, etc., R. Co.* v. *Carter*, 91 Va. 587, 592, 593, 22 S. E. 517; *McGehee* v. *Tidewater R. Co.*, 108 Va. 508, 510, 511, 62 S. E. 356; *Third Buckingham Community* v. *Anderson*, 178 Va. 478, 485, 486, 17 S. E. (2d) 433, 436.

Tested by these principles we are of opinion that the evidence on behalf of the plaintiffs fails to make out a cause of action under either count of their notice of motion for judgment.

With respect to the first count, the burden was on the plaintiffs to show that in filling in his lot the defendant acted wantonly, unnecessarily, or carelessly. *Harris Motor Co.* v. *Pulaski Furniture Co.*, 151 Va. 125, 134, 144 S. E. 414. The evidence fails to establish this. On the contrary, it shows that the lot was filled in and graded in the usual manner, preparatory to building thereon.

It is true that as the result of this filling, as has been said, some of the water from the Lamb lot drained northeastwardly into the depression which extends between the rear of the Parks and Beard buildings and the western wall of the plaintiffs' skating rink, and flowed under the latter building. But so did the water from the adjacent properties and buildings.

The plaintiffs argue that the defendant should have adopted their suggestion and should have run a ditch across the rear of the plaintiffs' property to the drainage ditch to the east thereof, which, they say, would have prevented the accumulation of the water along the side of their building. Assuming that this ditch would have had such a happy result, surely the obligation to construct it across the plaintiffs' own property, in order to drain the surface water therefrom, was on them and not on the defendant. Especially is this true since the evidence shows that a large part of the water of which the plaintiffs complain came from the roof of their own building.

To say that the defendant had no right to fill in the depression in his lot, but that it should have remained as a

basin or receptacle for the drainage of surface waters from the adjacent properties, would deprive him of the use of his property despite the rule that he had the right to turn back the surface water at his boundary line.

■ In 67 Corpus Juris, Waters, sec. 292, p. 869, it is said: *"Urban Property.* Although there is authority to the contrary, it has been generally held, either pursuant to the common-law rule[3] or as an exception to the civil-law rule,[4] that the owner of a lot in a city or town may make changes or alterations in the surface thereof essential to its enjoyment regardless of the effect on the flow of surface waters, provided he has not been negligent; * * *." See also, 56 Am. Jur., Waters, sec. 78, pp. 565, 566.

In *Harris Motor Co.* v. *Pulaski Furniture Co., supra,* we held that the construction of a store building in the town of Pulaski, in the usual and customary way, and without negligence, was not actionable, although the foundation walls obstructed the natural flow of the surface water across the lower level of the defendant's property, and caused it to accumulate under the plaintiff's building.

■ In the second count of the plaintiffs' notice of motion for judgment they seek to bring themselves within the principle of *Third Buckingham Community* v. *Anderson, supra.* In that case we held that the upper landowner, in the improvement of his property, has no right to collect surface water in an artificial channel or drain and deposit it in concentrated volume upon the property of his neighbor which is on a lower level. Obviously, the present record makes out no such case.

Such water as falls on the defendant's lot is not collected in an artificial drain and deposited in concentrated volume on the plaintiffs' land. It is scattered and diffused over the comparatively level surface of the lot, whence, in seeking a lower level, it drains partly toward the plaintiffs' property

---

[3] *Bennett* v. *Cupina,* 253 N. Y. 436, 171 N. E. 698.

[4] *Rielly* v. *Stephenson,* 222 Pa. 252, 70 A. 1097, 128 Am. St. Rep. 804, 22 L. R. A. (N. S.) 947.

In each of the above cases, and in others, the right of an urban lot owner to fill in a low area on his property is upheld.

and partly elsewhere. This is merely the unavoidable conse-
quence of the exercise by the defendant of his legal right
to improve his property in the usual and customary way.
*Harris Motor Co.* v. *Pulaski Furniture Co., supra.*

The judgment is

*Affirmed.*