# Richmond

## ALICE RUCKER, ET AL. v. LOUIS M. GREGORY, ET AL.

November 27, 1950.

Record No. 3694.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan and Miller, JJ.

The opinion states the case.

*P. R. Massie* and *Whitehead & Marshall*, for the plaintiffs in error.

*William M. McClenny*, for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

This litigation involves the ownership of an eight-foot alley on Main street, or U. S. Highway 29, in the town of Amherst, plus a strip about ten feet wide at right angles

to the alley at its southern terminus.  It was begun by the plaintiffs, the Ruckers, by filing a petition against the Gregorys, defendants, as co-terminus owners, to settle the boundary line between them.  Code, 1950, sec. 8-836.

A jury heard the evidence, viewed the premises twice and returned this verdict, upon which the court entered judgment:

"We, the jury * * * find in favor of the defendants. The line between the plaintiff and defendant is established as drawn on blueprint marked TWS#1 in pencil."

This blueprint, herein referred to as the Saunders map, is reproduced on page 700, the pencil lines drawn by the jury being indicated by the broken lines.  The plaintiffs claim ownership of the land shown within the outside boundary lines on the map, which the surveyor testified were run according to the fences, no definite corners being found. Other evidence showed the fences had been there 30 to 40 years, except there was no fence on the west side of the alley at the time of the survey.  The verdict gave to the defendants the alley and the strip of land indicated by the line drawn by the jury.

The plaintiffs, to whom this writ of error was granted, contend, first, that the verdict was contrary to the law and the evidence and without evidence to support it.  They say the evidence establishes that they have complete record title to the land in controversy, or, if not, they acquired title to it by adverse possession.

Both parties claim under John J. Shrader as their common source of title.  Plaintiffs' title was derived as follows:

Shrader conveyed to Colonel John T. Ellis by deed dated March 2, 1863, "a lot of land on which the store house of said John T. Ellis is located, supposed to contain ¼ acre be the same more or less."  By deed of the same date, Ellis conveyed the same property to Mays.  In a chancery suit of Claiborn's Executrix v. Mays, the papers in which were not found, Taylor Berry was appointed commissioner to sell and convey this store house property.

*Exhibit T.W.S. No 1*

MAP
SHOWING PROPERTY
of
ALICE RUCKER
SITUATED AT AMHERST. VA.
MAY 1949
SCALE 1"=20'          T.W SAUNDERS, S.A.C.
MAGNETIC BEARINGS

In the meantime, by deed dated December 21, 1881, Shrader conveyed to William D. Miles a lot containing 54.5 poles, the metes and bounds of which were set out on a plat of survey made by R. A. Pendleton and recorded as part of the deed. It was recited that the land conveyed was the southeastern portion of a larger lot sold to R. B. Moody, for which title had not been made to Moody, but Moody "assents to this conveyance," and signed the deed.

The map describing the land bears the legend that it was made by Pendleton for Moody, December 16, 1881. The land so described and conveyed consists of an eight-foot alley beginning in the center of the road and running south between parallel lines 5 poles and 14 links (91.7 feet), and then widening out to the west at right angles to the alley on a line beginning at the end of the alley and running south 72° W. 3.5 poles (57.7 feet) to a post, comparable to the line shown on the Saunders map which begins at the end of the alley and runs (reversed) S. 60½° W. 57′ to a post.

This Pendleton map shows a fence on the west line of the alley, corresponding to the west line shown on the Saunders map,. and to the west of the fence the land of "R. Moody." It shows the Ellis store on the east in the same relative position to the alley as the "dwelling" shown on the Saunders map. It does not give any description of the Ellis store lot or indicate its frontage on the road, but shows that it adjoins the land of William D. Miles on the east, and that the Miles land adjoins the tract of 54½ poles on its east and south sides and on up the west side to the Moody lot.

Afterwards, a deed dated December 26, 1883, on which this controversy turns, was made to J. T. Ellis (a different person from John T. Ellis), predecessor in title of plaintiffs. This deed was made by Taylor Berry, Commissioner, in the aforesaid suit of Claiborn's Executrix v. Mays. It granted to Ellis the property "now occupied by said Ellis as a store house it being the same property formerly

owned by Colonel John T. Ellis fronting on the Stage Road thirty five feet eight inches and running back to the present fence of Wm. D. Miles—twenty one feet and three inches beyond the addition put to the house by H. A. Strode and used as a printing office." Following that description is this recital:

"This property was originally bought by William Lawrence his purchase was assumed by Taylor Berry who sold his right to C. M. Jennings—he sold his to W. D. Miles, Miles sold his to Coffey, Coffey sold to H. A. Strode and he sold his to J. T. Ellis the grantee—no money was paid by the parties—but each took the others shoes as purchaser until it got to said Ellis who paid the money—in the sale from Miles he added to the property an eight foot alley— which he had bought from R. B. Moody and which is included in the front on the Stage road. The concurrence and acquiescence of the parties to the statements of this deed are evidenced by their signatures and seals hereto."

This deed was signed and sealed by Berry, Commissioner, Berry individually, Jennings, Miles, Coffey and Strode.

In 1888 J. T. Ellis executed a deed of trust on the property conveyed to him by the foregoing deed, which was foreclosed, and his trustee, in 1907, conveyed this property to F. J. Harris, the deed reciting: "It being the same property formerly owned by Colonel John T. Ellis fronting on the stage road 35 feet 8 in."

Harris conveyed the same property, in 1909, to Tucker, trustee for Ida Coleman; and in a chancery suit to wind up the trust the same property was conveyed by a commissioner, by deed dated June 5, 1915, to William H. Rucker, who later devised it to his wife, Alice Rucker, for life and at her death to her children, the plaintiffs.

The Gregory title was derived as follows:

By deed dated June 22, 1883, John J. Shrader (the common source) conveyed to Robert B. Moody (who had joined in the deed of 1881 to William D. Miles conveying the 54.5 poles, including the eight-foot alley) a lot on

Main street, in Amherst, described as "adjoining the lots of H. A. Strode, Jno. B. Robertson and Wm. D. Miles, fronting on said street 71 feet and running back an average length of 90 feet." The jury obviously based its verdict on this deed.

One day later, June 23, 1883, Moody conveyed to Steiberitz 46 feet front of this property adjoining William D. Miles, Henry A. Strode (who then owned the Ellis store property as well as the eight-foot alley), and the said R. B. Moody (who still owned part of the Shrader land). Steiberitz conveyed this property to M. B. Coffey and in a chancery suit it was sold and conveyed to Grant, who conveyed it, in 1906, to Laura Higginbotham, wife of James W. Higginbotham.

By deed dated January 1, 1903, Robert B. Moody conveyed to the said James W. Higginbotham another part of the property conveyed to him by Shrader, described as fronting on said street "about twenty-five feet and running back about ninety feet."

James W. Higginbotham and Laura E. Higginbotham were the parents of Ida Coleman, predecessor in title of William Rucker, the immediate predecessor of plaintiffs.

The Higginbothams, in 1912, conveyed to Henry P. Robertson, who assumed certain deeds of trust, and the trustee conveyed to Harvey Patterson, in 1917, describing the property as adjoining William H. Rucker, Benjamin Rucker and James E. Wood estate. Benjamin Rucker then owned the lot now owned by Watt Brown on the west side of the Gregory lot. Patterson conveyed to Seay and in 1920 Seay conveyed to Frank C. Addison, one of plaintiffs' witnesses. Addison conveyed to Laughborough and Carter, in 1926, and they conveyed to L. C. Gregory by deed dated December 15, 1927, and Gregory devised it to his wife, Louise M. Gregory, one of defendants, by will probated in 1943.

In none of the deeds in the Gregory chain of title, after

the deeds to the Higginbothams, is there any reference to any frontage on Main street.

From these deeds it is to be determined which of the contending parties has the record title to the eight-foot alley. It is clear that this alley did exist. Defendants say in their brief: "There is no denial that an eight (8) foot alley was conveyed as a part of the lot of the Plaintiffs, but it is contended that the alley was not in addition to the thirty-five (35) feet and eight (8) inch frontage but a part of and absorbed into said thirty-five (35) feet and eight (8) inch frontage."

It is also clear that this alley was conveyed in 1881 by Shrader and Moody to Miles, and that the Ellis store was then very close to its eastern line. The only description of this Ellis store property is that it was supposed to contain one-fourth of an acre. In the chancery suit of Claiborn's Executrix v. Mays, Berry was appointed commissioner only to sell and convey this store house property. He had no authority as commissioner to sell the alley, which was never owned by Colonel Ellis or his grantee, Mays.

In his deed to J. T. Ellis, Commissioner Berry granted the property "formerly owned by Colonel John T. Ellis fronting on the Stage Road thirty five feet eight inches." The deed then goes on to say that "this property," i.e., the property the commissioner was conveying, was originally bought (evidently in the suit) by William Lawrence. It was apparently not thought necessary to make him a party to the deed because his purchase was assumed by Berry. Berry sold his "right" to Jennings, who sold to Miles. The only "right" to this point was the right to purchase the one-fourth acre. But while Miles had this right, he acquired the eight-foot alley by the 1881 deed from Moody (and Shrader). When Miles sold his "right" to Coffey, he added into the sale the eight-foot alley, and it, so the deed says, "is included in the front on the Stage road."

The defendants insist that the quoted words necessarily mean that the eight-foot alley was a part of the 35

feet 8 inch frontage and that, therefore, the plaintiffs, successors in title of Ellis, do not have record title to more than the 35 feet 8 inches and hence do not have title to the eight-foot alley. Even if the deed conveyed to Ellis only 35 feet 8 inches on the street, it does not necessarily follow that the plaintiffs do not have title to the eight-foot alley. But we do not believe that is the proper construction of the deed when it is read in the light of the surrounding facts and circumstances, which may be resorted to in aid of its interpretation. *Schroeder* v. *Woodward*, 116 Va. 506, 82 S. E. 192; *Blair* v. *Rorer*, 135 Va. 1, 31, 116 S. E. 767, 778.

The deed itself shows that the commissioner was at pains to say that what he was conveying, and he had no authority to convey more, was the Colonel John T. Ellis property fronting 35 feet 8 inches on the Stage road. The 35 feet 8 inches seems rather clearly to refer to the frontage of the Colonel Ellis store property. The Saunders map shows the distance from the post in the Wood line to the east line of the present alley as 35.66 feet, corresponding to the measurement of the frontage of the Colonel Ellis store.

It is clear from the deed that Miles had sold to Coffey more than the Colonel Ellis store property. He had added in that sale the eight-foot alley. Coffey sold to Strode all he got from Miles, and Strode owned the alley when the deed he signed was made to J. T. Ellis. The alley has remained there beside the building on the Colonel Ellis lot down through the years. There is no evidence in this record that it was ever on a location different from that shown on the Saunders map and down to the present time there has remained 35.66 feet of front from the eastern corner of that alley out to the post on the street in the Wood line.

Harvey Patterson, to whom the Gregory property was conveyed in 1917, and who sold it in 1920, testified that while he owned it there was an alley between him and the Rucker property and he never claimed any interest in the alley and he never heard of anybody claiming it other than the owners of the Ellis store property.

J. R. Goodwin testified that he had known the Rucker and Gregory properties since 1914; that he had delivered coal to the Ruckers over it from 1915, or 1916, up until 1938, and he had never heard anybody dispute the claim of the Ruckers to the alley.

F. C. Addison, who owned the Gregory property from 1920 to 1926, testified that he never asserted any claim to the alley and never heard of anybody else claiming it; that it was supposed to be used by both parties and he never knew who really owned it.

There was similar testimony from others as to its existence and use and it is clear that the alley has existed and been used ever since it was sold in 1881 to Miles, who then owned the land back of it as well as the Ellis store property. While F. C. Addison owned the Gregory property he executed a deed of trust on it in 1924, in which he described the property as beginning at an eight-foot alley.

We think the proper construction of the deed from Taylor Berry, Commissioner, and others, to J. T. Ellis is that it conveyed the eight-foot alley in addition to the 35 feet 8 inches in the Colonel Ellis store property. But even if it was included in the 35 feet 8 inches, it is entirely clear that the eight-foot alley was intended to be, and was, conveyed by that deed. As stated above, there is no description of the Ellis store property and it is not determined by this record that the 35 feet 8 inches should be measured from the post in the Wood line shown on the Saunders map rather than from the western corner of the alley as shown on that map.

As stated, the defendants rely on the deed of 1883 from Shrader to Moody as giving them title to the alley. While it is true that deed describes the property conveyed as fronting 71 feet on Main street, it is also true that the property is described as adjoining the land of H. A. Strode, who then owned the eight-foot alley. In order for it to be said that the 1883 deed covered the alley, effect

would have to be given to the call for 71 feet as against that part of the description which calls for the H. A. Strode line. This would be contrary to the principle of construction that where there is conflict, calls for distances give way to calls for known boundaries. *Richmond Cedar Works* v. *West*, 152 Va. 533, 540, 147 S. E. 196, 198; 3 M. J., Boundaries, sec. 4, p. 425, sec. 14, p. 434; 11 C. J. S., Boundaries, sec. 53, pp. 621-2.

Again, this alley was not covered by the deed of 1883 from Shrader to Moody unless that distance covers the alley when measured from the correct point on the west. That point is the Watt Brown corner and the record shows that that corner has never been definitely located.

In addition, while it is not specifically spelled out, it is a fair inference from the record that the 71 feet was all the frontage on Main street that Shrader owned. He and Moody had already conveyed the eight-foot alley to Miles in 1881 by deed of record. It is not to be presumed that when he conveyed to Moody in 1883 he intended to convey land to which he had no title. *Mathews* v. *Gillespie*, 137 Va. 639, 120 S. E. 324. The fact that after Moody had conveyed 46 feet to Steiberitz he thereafter conveyed to Higginbotham only "about 25 feet" indicates that Moody did not intend the number of feet to be the controlling call.

While, as stated, the defendants do not deny the existence of the alley, they advance the theory that it is covered by the present building on the plaintiffs' lot, which they say was remodeled and made wider while Ida Coleman lived in it. The evidence fails to establish such a theory and it is refuted by the testimony of Ida Coleman that the alley was still there when she lived in the remodeled structure; that she claimed the alley as her own and used it and nobody ever objected.

The defendants introduced a diagram made by William E. Sandidge, former clerk of the county, indicating that the defendants' lot extended 71 feet between the Benjamin Rucker lot, "frontage not given," and the William H. Rucker

lot, 35 feet 8 inches "including 8' alley." The plaintiffs objected to the introduction of this diagram and it is not clear upon what theory it was admissible; but at most it only expressed the opinion of the clerk as to what the recorded deeds show, and a like opinion of L. C. Gregory that "this is the measurement of lots on the front," written by him on the back of the diagram. The evidence does not show when he wrote it.

The defendants do not assert any adverse possession of this alley sufficient to affect the superior record title of the plaintiffs. In fact, the plaintiffs claim title by adverse possession and by their evidence show a long continued use of the alley. Such slight use as the defendants have made of it is shown to have been casual and in common with the use of the plaintiffs.

Mrs. Louise Gregory and her son, Robert, were the only witnesses to testify for the defendants as to use and possession. The latter testified that the plaintiffs brought this proceeding after he poured concrete on the alley to make it part of his filling station. This, he said, was in May, 1948. He further testified that in 1935 his father talked to William Rucker about filling in between their properties, as a result of which it was agreed that his father would build a foundation under that side of Rucker's house for which Rucker would pay; that his father then built a retaining wall across the back to connect with the foundation, and the State highway department, then widening the street through Amherst, filled it in. He also testified that his father got T. W. Saunders to survey his property and the only line he remembered was one that ran parallel to the Rucker house, barely missing the back corner, and extending 12 or 15 feet below the house. He said his father, in 1935, put in a curbing on the line that Saunders made, which was there when he undertook to remodel his filling station. He gave no date for such survey and Saunders had no recollection of having made it and no notes about it. Even if what was done in 1935 amounted to taking possession, not only was

it for an insufficient time before this action was brought to ripen into title, but also the evidence shows without contradiction that such possession was not exclusive.

There is no evidence that the Gregorys or their predecessors ever claimed to own the strip of land given to them by the jury below the line N 60½° E 57′ shown on the Saunders map, other than the statement of Robert Gregory, "Well, he claimed it because his deed called for it," referring to his father. His father's deed did not in fact call for it. That deed gave no distance for the street frontage but described the lot as adjoining William Rucker and extending from Main street back to the garden of William Rucker; and that was the description in the deed to his grantors from F. C. Addison, in 1926, who testified that William Rucker had his garden there and nobody else claimed it. The fence shown on the Saunders map has been there for 30 to 40 years and the land next to it has been used during that time as a garden by Ida Coleman and William Rucker.

We think it clear that regardless of which record title is superior as to this strip of land, the plaintiffs have acquired title by adverse possession.

Our conclusion is to reverse the judgment below and to enter judgment here for the plaintiffs, establishing the line between them and the defendants as running from the post in the Wood line N 60½° E 57′ to the alley; thence N 25° W 62′ to the edge of the highway as shown on Exhibit TWS # 1 above.

It therefore becomes unnecessary to discuss the remaining assignments of error.

*Reversed and final judgment.*