# Richmond

## Harvey L. Howlett v. City of South Norfolk.

March 10, 1952.

Record No. 3901.

Present, All the Justices.

The opinion states the case.

*Louis B. Fine* and *Robert C. Stackhouse,* for the plaintiff in error.

*R. E. Gibson,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Harvey L. Howlett, in this action against the City of South Norfolk, alleged that the city had negligently raised the grade of Wright avenue, the street in front of his residence, thereby causing surface water to flood his lot and stand under his dwelling, to his damage in the sum of $5,000. The jury returned a verdict for defendant, on which judgment was entered.

Plaintiff bases his right to recover entirely on the alleged negligence of the city in causing surface water to overflow the curbing gutter on Wright avenue and flood his lot.

The testimony for plaintiff tends to prove that in March, 1949, he moved into a newly constructed dwelling which he purchased from Robert B. Rowland, Jr., and wife, who acquired it by deed from W. D. Hobbs, Jr., and S. A. Thorpe, dated April 25, 1949. The dwelling was built on Lot No. 132, 50 x 100 feet,

on Wright avenue in the city of South Norfolk. At that time no surface water inundated his lot or collected under his residence. In July, 1949, without notice to him, the city began its improvements on Wright avenue. It raised the grade of the street, built curbing, storm gutters and sidewalks. This was completed in December, 1949, after which surface water collected on his lot and stood 4½ to 5 inches deep under his dwelling, flooding his furnace.

The testimony for defendant tended to prove that in 1927 the then owners of several acres, of which plaintiff's lot was a part, caused a plot to be made showing a subdivision of the entire area into lots, streets and alleys. Grades for the drainage of the streets, including the grade of Wright avenue, were established, and a plot of the subdivision approved October 10, 1927. At that time the land was covered with brush and standing trees, the diameter of some of which was 15 inches. That part of the subdivision lying on Wright avenue was not cleared until 1947, and then the holes made by the removal of stumps were not filled, nor was the terrain leveled.

On August 14, 1948, the city, on request of W. D. Hobbs, Jr., and S. A. Thorpe, the then owners of several lots in the 800 block on Wright avenue, issued permits for the construction of eight dwelling houses, including the dwelling now owned by plaintiff. At that time Wright avenue was open, but ungraded and unimproved. Surface water collected in many mudholes and depressions in Wright avenue.

This being the condition of the terrain, when the owners obtained the permits to construct the dwellings, they requested Irwin W. Dunning, the city engineer, to give them the proposed grade of Wright avenue. The engineer collected all available data, went upon the scene, and advised Hobbs that the walkway from the building to the street on Lot No. 138, the northwestern corner lot of Wright avenue and Chamberlin street, should be laid at the then level of the ground, and west of this lot the level should be raised one inch per fifty feet. Plaintiff's lot is approximately 300 feet west of Lot No. 138. Hence the ground level of the walkway on his lot should have been approximately six inches higher than the level of Lot No. 138. Instead of complying with these instructions, the owners built plaintiff's house to conform to a level of 6¾ inches lower than the elevation given them by the engineer, and seven inches lower than the

unimproved alley at the rear from which surface water collects on his lot and under his house.

Defendant proved that it had long been its policy to install sidewalks "when abutting property owners request such installation and agree to contribute their one-half" of the cost. All the owners (including plaintiff's predecessors in title) of lots abutting on Wright avenue were informed that "Recently the Council has offered to install curbing and guttering whenever the abutting property owners request the same and agree to contribute one-half of the cost of this type of installation." They were not required to pay any part of the cost of grading and surfacing the street.

On December 16, 1948, Thorpe and Hobbs, the then owners of plaintiff's lot, requested the city to make the improvements on Wright avenue, and agreed to pay their proportionate part of the cost. On February 17, 1949, the city notified the owners that it would make the improvements. However, actual construction was not begun until July 20, 1949, at which time the grade of Wright avenue was raised two inches higher than the grade given by the city engineer to Hobbs and Thorpe. This made the elevation of the street 8¾ inches higher than the elevation of plaintiff's lot.

An agreement of abutting property owners to pay a part of the cost of improvements to a street is not a valid defense to an action against the city, based upon its negligence in making the improvements, or in maintaining the street after the improvements have been made. The right of action does not arise on the mere adoption of plans for improvements. It arises when the actual installation of the improvements on the ground results in damage. *Swift & Co.* v. *Newport News,* 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404; 63 C.J.S., Municipal Corporations, sec. 1258 c., p. 989.

The general rule is that a city, in adopting a plan for the improvement of its streets, or other public works, acts in a governmental capacity, but in the construction and maintenance of such improvements, it acts in a ministerial or proprietary capacity, and is liable for damages caused by its negligence. *Hoggard* v. *Richmond,* 172 Va. 145, 200 S. E. 610, 120 A. L. R. 1368; *Norfolk* v. *Hall,* 175 Va. 545, 9 S. E. (2d) 356.

It is conceded that the city raised the elevation of Wright avenue two inches higher than that adopted in 1927. However,

there is no evidence tending to show that this change in the grade caused surface water to flow from the street and flood plaintiff's property.

Plaintiff proved by S. W. Armistead, civil engineer of thirty years' experience, that in order to drain plaintiff's lot the level of Wright avenue would have to be lowered one foot. On cross-examination, he said that the city was not careless or negligent in the plan adopted. "As far as I can see, it is a well worked plan. The City Engineer of South Norfolk is interested in draining streets there, but didn't drain the land on the side of it in that block." The city engineer testified that if the grade on Wright avenue were lowered one foot, it would be necessary to change the drainage plan of the entire area, and that the cost of the consequential changes would be prohibitive, or out of proportion to the benefits accruing therefrom.

This brings us to the question of surface water, which is defined to be that which is diffused over the surface of the ground, derived from falling rains and melting snow, and continues to be such until it reaches some well defined channel; or, as stated in 40 Cyc. 639: "Surface waters are such as diffuse themselves over the surface of the ground, following no defined course or channel."

The rights of adjacent land owners with respect to surface water is well settled in this State. Surface water is considered a common enemy, and each landowner may fight it off as best he can. He may obstruct or hinder its flow and may even turn it back upon the land of his neighbor from whence it came. *Norfolk, etc. R. Co.* v. *Carter,* 91 Va. 587, 22 S. E. 517; *Mason* v. *Lamb,* 189 Va. 348, 53 S. E. (2d) 7, 12 A. L. R. (2d) 1332. However, this right to obstruct the flow of surface water must not be exercised wantonly, unnecessarily, or carelessly, as the rule is modified "by that golden maxim of the law, that one must so use his own property as not to injure the rights of another. It must be a reasonable use of the land for its improvement or better enjoyment, and the right must be exercised in good faith, with no purpose to abridge or interfere with the rights of others, and with such care with respect to the property that may be affected by the use or improvement as not to inflict any injury beyond what is necessary." *Norfolk, etc., R. Co.* v. *Carter, supra.*

"The right thus modified, has also its exceptions. One exception is that the owner of the land can not collect the water

into an artificial channel or volume and pour it upon the land of another to his injury. The right to fend off surface water does not extend that far.

*   *   *   *   *   *

■ "Another exception to the right * * * is that the owner of the land can not interfere with the flow of surface water in a natural channel or watercourse. Where the water has been accustomed to gather and flow along a well defined channel, which by frequent running it has worn or cut into the soil, he may not obstruct or divert it to the injury of another * * *." *Norfolk, etc., R. Co.* v. *Carter,* 91 Va. 587, 22 S. E. 517. See *Mason* v. *Lamb, supra; Hicks* v. *Anderson,* 182 Va. 195, 28 S. E. (2d) 629; *Third Buckingham Community* v. *Anderson,* 178 Va. 478, 17 S. E. (2d) 433; *Wright* v. *Richmond,* 146 Va. 835, 132 S. E. 707; *Portsmouth* v. *Weiss,* 145 Va. 94, 133 S. E. 781; *Farmville* v. *Wells,* 127 Va. 528, 103 S. E. 596; *McGehee* v. *Tidewater R. Co.,* 108 Va. 508, 62 S. E. 356. 25 Am. Jur. Highways, sec. 87, p. 391; Annotation 27 A. L. R. p. 971.

Plaintiff does not contend that defendant obstructed or hindered the flow of surface water from his lot along any defined channel or ditch. His contention is that surface water from Wright avenue was gathered in an artificial channel and ran over the curbing onto his property.

■ The photographs filed by plaintiff as exhibits show that a sidewalk 3½ to 4 feet wide, and a grass plot approximately 3 feet wide, are between plaintiff's property line and the gutter curbing on Wright avenue. The uncontradicted testimony is that the level of the sidewalk is eight inches higher than the bottom of the gutter. Hence, in order for surface water to flow from the street onto plaintiff's lot it necessarily would have to flow over the eight inch gutter curbing and across the grass plot and sidewalk. The overwhelming weight of the testimony is to the effect that the only surface water that accumulates on plaintiff's property is rain water that falls on the lot, and water that trickles down the slope of the alley at the rear.

Plaintiff's own testimony on the subject is as follows:

"Q. You are not prepared to say that it does not slope that way, and you haven't seen water run from the sidewalk back that way?

"A. No, but I could see it trickling down by the pile of dirt there.

"Q. That was not after this was filled in?

"A. No, sir. As it is now it wouldn't be because I have got it piled higher at the sidewalk so it won't; it just tapers back against the house.

"Q. The water from the street, sidewalk and curb line does not flow back over your property now?

"A. If it rains hard you can see where it will trickle over there.

\* \* \* \* \* \*

"Q. Your main difficulty, Mr. Howlett, is that the water that collects in your backyard has no way to drain off now; is that the case?

"A. Not exactly. Where I was telling you where I brought the front yard up to the sidewalk to keep water coming off the sidewalk down into the property, I had to taper that back towards the front of the house, and when it rains it seems like water seeps in front towards the house.

"Q. You mean under the house?

"A. Yes."

Plaintiff's expert witness, S. W. Armistead, testified:

"Q. Mr. Armistead, does any water from the street along there on the sidewalk flow over on the Howlett property? I believe you testified that there was water in the back yard that collected?

"A. No water from the street can flow over into this lot.

\* \* \* \* \* \*

"Q. Did you observe in the rear of the Howlett house a crawl hole under the house?

"A. I did.

"Q. Did you not see that level of the lower portion of the crawl hole is about the same as the yard?

"A. About the same, probably a few inches lower."

The city engineer testified that the grade from plaintiff's property line to the curbing falls ¼ of an inch to the foot, and that even rain water that falls in this space drains into the gutter, and not on the lot in question.

Plaintiff's failure to prove his allegation to the effect that the city, by its negligence, caused water to overflow the curbing gutters and flood his property, renders it unnecessary to discuss his assignments of error seriatim.

The judgment is affirmed.                                   *Affirmed.*