# Staunton

## HODGES MANOR CORPORATION AND CONSTRUCTION ASSOCIATES, INCORPORATED v. MAYFLOWER PARK CORPORATION.

September 14, 1955.

Record No. 4396.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*William B. Spong, Jr.* and *William L. Parker*, for the plaintiffs in error.

*James N. Garrett* and *Louis Brenner*, for the defendant in error.

SMITH, J., delivered the opinion of the court.

Mayflower Park Corporation, hereafter referred to as plaintiff, brought this action against Macco Holding Corporation, Hodges Manor Corporation and Construction Associates, Incorporated, seeking $25,000 in compensation for damages resulting from the unlawful collecting and discharging by them of great and increased quantities of surface water through artificial channels upon its land.

In its original and amended motions for judgment plaintiff alleged that defendants in subdividing and improving their land had installed artificial drains and tunnels or pipes by which they were collecting and pouring large and unnatural quantities of surface water upon its land, and that defendants also entered upon plaintiff's land without permission and lowered the level of a small ditch for a distance of approximately 300 feet in order to permit the water collected on defendant's land to flow in increased quantity and velocity upon its land. The only pleadings filed in answer to the plaintiff's original and amended motions for judgment were defendants' separate grounds of defense, which denied all of plaintiff's material allegations.

A jury trial resulted in a verdict and final judgment for $13,000 in favor of plaintiff and against Hodges Manor Corporation and Construction Associates, Incorporated, hereafter referred to as defendants, the evidence having been struck as to Macco Holding Corporation. The errors assigned are in substance that the evidence is insufficient to support the verdict; that the trial court erred in admitting certain evidence and in granting Instruction P-7 on the issue of damages.

The question of whether the evidence is sufficient to support the verdict must be resolved on the credible evidence most favorable to the plaintiff. In the spring of 1950 plaintiff purchased 100 acres of land in Norfolk county, 35 acres of which it subdivided into

building lots and called Mayflower Park, located on the west side of and adjoining State Highway No. 696, referred to locally as Old Hodges Ferry Road or Airport Road. At that time the land lying opposite plaintiff's land on the east side of Highway No. 696 was used as an airport, but in June of 1952 Hodges Manor Corporation purchased this land and subdivided it into building lots on which it has built about 100 dwelling houses. During the development of this subdivision, known as Hodges Manor, a road, Logan Drive, which intersects State Highway No. 696 at right angles, was built by Construction Associates, Incorporated, pursuant to an agreement between it and Hodges Manor Corporation. At the point where Logan Drive intersects the highway there was formerly a twelve inch drain pipe extending under the highway from the airport land to plaintiff's land through which surface water flowed into a small ditch on plaintiff's land and thence into a tidal estuary of the Elizabeth River, called Western Branch. After constructing Logan Drive defendants replaced this twelve inch drain pipe with two eighteen inch reinforced concrete pipes, one on each side of Logan Drive, which pipes extended under the highway and protruded onto plaintiff's land. Then to permit the free and unobstructed passage of water through the eighteen inch pipes, defendants without permission entered upon plaintiff's land and lowered the level of the small ditch on its land for a distance of approximately 300 feet.

Prior to the development of Hodges Manor there was no drainage ditch on the airport property leading into the twelve inch drain pipe under the highway and the only water entering this pipe was a relatively small quantity that accumulated along Highway No. 696. But in the development of their property defendants laid out and graded the streets and roadways in such manner that their surface levels were lowered as much as eighteen inches to two feet so that now substantially all of the water from Hodges Manor is collected on Logan Drive and discharged in increased quantity and velocity onto the property of plaintiff.

The law regarding surface water is set forth in *Norfolk & W. R. Co.* v. *Carter*, 91 Va. 587, 22 S. E. 517; *Third Buckingham Community* v. *Anderson*, 178 Va. 478, 17 S. E. (2d) 433; *Mason* v. *Lamb*, 189 Va. 348, 53 S. E. (2d) 7, 12 A. L. R. (2d) 1332; and *Howlett* v. *South Norfolk* 193 Va. 564, 69 S. E. (2d) 346, and cases cited. In the *Carter* case, *supra*, 91 Va., at pages 592, 593, the law that controls the issue of liability in the instant case is stated in the following language:

"Where the common law rule is in force, as in this State, surface water is considered a common enemy, and the courts agree that each landowner may fight it off as best he may. * * *

"This right in regard to surface water may not be exercised wantonly, unnecessarily, or carelessly; but is modified by that golden maxim of the law, that one must so use his own property as not to injure the rights of another. * * *

"The right thus modified, has also its exceptions. One exception is that the owner of the land can not collect the water into an artificial channel or volume and pour it upon the land of another to his injury. The right to fend off surface water does not extend that far."

This exception to the general rule was quoted with approval and applied in *Third Buckingham Community* v. *Anderson, supra,* which involved a factual situation strikingly similar to that now before us. In that case an upper landowner in constructing apartment houses and grading streets on its property installed a system of artificial drainage in such a manner that an existing twelve inch drain pipe was insufficient to carry the additional surface water. In order to dispose of this additional water the upper landowner installed a twenty-four inch drain pipe on its property to within a few inches of the land of a lower landowner upon which it discharged the water. In holding that the upper landowner, in the improvement of its property, had no right to collect surface water in an artificial channel or drain and deposit it in concentrated volume upon the land of the lower landowner to his injury, the court said:

"It is difficult for a lay person to comprehend and accurately state the effect of the testimony concerning the maps and their indicia. However, certain large facts stand out in bold relief. One is that the plaintiff suffered no damage caused by water until the defendant arrived and put in motion its concomitants.

"Another of these facts is that the defendant collected the surface waters in and discharged them from a large pipe, which form it had not hitherto assumed. Another highly potent fact is that the jury viewed the entire premises; they saw the lay of the lands, the streets, the ways, the drainage system and the incident conditions which were the subjects of the testimony, before arriving at their verdict. It is not within the province of the court, under the conditions here existing, to override the judgment of the trial court based upon the jury's verdict." 178 Va., at page 484.

Defendants rely on *Mason* v. *Lamb, supra,* where the defendant in filling a depression on his land caused the surface water to be diffused over a comparatively level surface and drain to lower surfaces, including the land of plaintiffs. There the water was not collected in an artificial drain and deposited in concentrated volume upon plaintiffs' land. We pointed out that the case was not controlled by the *Third Buckingham Community* case, *supra,* and held that the additional water flowing upon plaintiffs' land as a result of the filling of the depression on defendant's land was merely the "unavoidable consequence of the exercise by the defendant of his legal right to improve his property in the usual and customary way." 189 Va., at page 357.

Here, as in the *Third Buckingham Community* case, *supra,* plaintiff suffered no damage from surface water until Hodges Manor Corporation purchased the airport property and installed the extensive drainage system by which surface water was collected in great quantities and discharged upon plaintiff's land through two eighteen inch pipes, where one twelve inch pipe had formerly been sufficient. Furthermore, defendants in utter disregard of plaintiff's rights wrongfully installed the two large pipes so that they extended onto plaintiff's land, and in addition defendants entered upon its land and lowered an existing ditch for a distance of more than 300 feet. Before arriving at their verdict the jury viewed the entire premises, saw the lay of the lands, the streets, the ways, the drainage system and the incident conditions which were the subjects of the testimony. Under these circumstances we are not at liberty to set aside the verdict approved by the trial court unless it appears that error was committed in the course of the trial.

Defendants contend that such errors were committed when the trial court admitted testimony as to the diminution in the value of plaintiff's land; in admitting evidence that the damage caused by the defendants could be remedied by the construction of a system of drainage at a cost less than the decrease in the value of plaintiff's land; and in the giving of Instruction P-7 as to the cost of such drainage system.

That the plaintiff's land was damaged is clearly shown by the maps, photographs and testimony of witnesses. Leonard G. Karp, president of Mayflower Park Corporation, testified that prior to the installation of defendants' extensive drainage system only a negligible amount of water flowed through the twelve inch pipe onto his cor-

poration's land, but that after this pipe was replaced with the two larger pipes Mayflower Park was flooded from time to time when it rained, making it worthless as a housing subdivision. The various photographs, all of which were properly admitted in evidence, show the extent of this flooding. This witness further testified that he was familiar with real estate values in that area, having bought and sold a considerable amount of land there, and that in his opinion the difference in the value of the property before and after the channelling of the additional water upon it was $30,000. This was the only evidence offered by either party on the value of the plaintiff's land before and after the installation of defendants' drainage system. While defendants assign error to the admission of this evidence, the point has not been saved as required by Rules 1:8 and 5:1(4). Furthermore, Instruction P-2,[1] given without objection, told the jury that if it found for the plaintiff it could fix damages "in such amount as will compensate the plaintiff for such damages as you may find from the evidence it has suffered." Therefore in view of this evidence and Instruction P-2 the jury was warranted in fixing damages at any sum not exceeding the amount claimed in the motion for judgment.

■ Since the errors assigned to the admission of testimony as to the cost of remedying the injury to plaintiff's land and the granting of Instruction P-7 involve only one issue they will be discussed together. The plaintiff called John C. Mobley, a former assistant engineer for the city of Portsmouth and a general contracting concrete and drainage estimator, who testified that he had observed the property involved and that in his opinion the most feasible and inexpensive way to remedy the situation created by the acts of defendants was to pipe the water 1100 feet north from the eighteen inch pipes to a ravine on plaintiff's land. He estimated this would cost $13,500.

S. K. Baird, a road and drainage contractor, also called by the

---

[1] Instruction P-2 reads as follows:

"The Court instructs the Jury that if you believe from the preponderance of the evidence in this case that the defendants, through their agents, servants or employees, collected surface water in considerable quantity on the property known as Hodges Manor, and did artificially channel or precipitate the said water on and upon the land of the plaintiff in greatly increased or unnatural quantity, and that such acts of the defendants resulted in substantial injury to the property of the plaintiff, then you should find a verdict in favor of the plaintiff in such amount as will compensate the plaintiff for such damages as you may find from the evidence it has suffered."

plaintiff, testified that he inspected the land involved and that in his opinion the most practical and cheapest way to remedy the drainage situation was to install approximately 1050 feet of pipe, which he estimated would cost $12,800 including the necessary catch basins. Although the defendants objected to this evidence they did not offer any evidence as to the most practical and inexpensive method of alleviating the drainage situation created by them.

It thus appears that after the plaintiff had introduced evidence of the diminution in the value of its property in the sum of $30,000 caused by the wrongful acts of defendants, it offered evidence that the injury to its property could be remedied by the expenditure of a smaller sum. In the light of this evidence the trial court gave plaintiff's Instruction P-7, which reads as follows:

"The Court instructs the Jury that if you find from the evidence in this case that the plaintiff is entitled to recover from the defendants that in fixing the amount of your award you may take into consideration the reasonable cost of repairs or improvements to the property of the plaintiff, if any, which you may find to be necessary because of the acts of the defendants."

While defendants contend that it was error to have granted this instruction they merely objected on the ground that it was not warranted by the pleadings in the case. Then instead of offering an instruction on some other theory of damages they adopted the theory of damages suggested in Instruction P-7 in their Instruction D-7,[2] which it will be observed went much further than P-7. Consequently defendants will not be heard to complain that the jury found damages based on this theory. It is therefore clear that neither the theory of damages suggested in Instruction P-7 nor the evidence on which it was based can be considered to have been actually prejudicial to the rights of defendants.

---

[2] Instruction D-7 reads as follows:
"The Court instructs the jury that should they believe from the evidence in this case that the plaintiff, Mayflower Park Corporation, has been damaged, and that the measure of damages is the cost necessary to lay a drainage system of approximately one thousand feet running parallel to the Old Hodges Ferry Road and connecting with an existing ravine, they may consider in mitigation of damages the fact that prior to any damage done the said Mayflower Park Corporation, a ditch existed on their property which connected with said ravine, that some of the water from the lands formerly owned by the defendants drained through said ditch and through said plaintiff's land to the said ravine and subsequently to the Western Branch of the Elizabeth River, and that this condition was open, obvious and apparent to the plaintiff, Mayflower Park Corporation, before they purchased this property."

For the reasons stated we hold that, upon the issues made by the pleadings and tried in this case, the judgment is correct and therefore it is affirmed.

*Affirmed.*