WILLSTON APARTMENTS, SECTION F, INC. and Samuel F. Thomas, Plaintiffs,

v.

Irving D. BERGER and Garfield L. Kass, Trustees, and Westminster Investing Corporation, Defendants.

Civ. A. No. 2716.

United States District Court
E. D. Virginia,
at Alexandria.

May 15, 1964.

Wiley R. Wright, Jr., Alexandria, Va., for plaintiffs.

Charles H. Duff, Arlington, Va., David N. Webster, Washington, D. C., for defendants.

LEWIS, District Judge.

This is a suit for damages and permanent injunction resulting from the flooding of plaintiff's land. Subsequent to the filing of this action, the original plaintiff and defendants transferred their respective interests in the properties in question to Samuel F. Thomas and Westminster Investing Corporation. They were added as party plaintiff and party defendant without objection.

The findings and conclusions of the Court are as follows.

The properties in question, known as the Willston Apartments and the Seven Corners Shopping Center, are adjacent properties abutting Arlington Boulevard near the Seven Corners intersection. The western boundary of the apartment land is in common with the eastern boundary of the shopping center land. Surface water falling on this rolling land in its natural state drains into the ravine or branch which traverses the properties.

The apartment land (lower land) was developed several years prior to the development of the shopping center (upper land). Surface water from this land and the adjacent undeveloped land continued to drain into the ravine or branch traversing the properties without ill effect until subsequent to the building of the shopping center.

All of the shopping center land, comprising substantial acreage, was improved by masonry buildings and asphalt parking areas. In so doing the natural topography was substantially leveled and graded toward Arlington Boulevard. An elaborate drainage system was designed to intercept and carry away ninety-five to one hundred per cent of the surface water which fell upon the paved parking areas. This drainage system in the main consisted of a series of grates located adjacent to the curb separating the shopping center from the service road paralleling Arlington Boulevard. (Grates were not located in the several entrance and exit lanes leading to the service road.) The grades for the parking areas were designed to direct the flow of the surface water to and over the grates, thence by pipe to the 1,700,000-gallon reservoir or catch basin designed to control the problem of the flow down the ravine or stream (Long Branch). Surface waters not intercepted by the grates entered the curbed service road via the entrance and exit lanes and proceeded east downgrade to the lowest point in the service road, thence over the curb on to the apartment land.

There was some evidence that surface water coming from the west (in the vicinity of the Hot Shoppe) aggravated the situation. The volume of water coming from the west was unknown. Its effect on the overall picture was speculative at best.

Catch basins located at the low point in the service road were sufficient under normal conditions but were inadequate to handle the increased flow of surface water coming from the paved parking areas during unusual heavy rains.

██ It was clearly established that the waters causing the damage to the apartment land came from the shopping center parking areas. The expert for the plaintiff expressed the opinion the shopping center parking areas were improperly graded and the size and number of grates were inadequate to intercept and carry away the surface water during heavy flash rains. The defendants' expert, the designer of the drainage system, said the parking areas were not installed in accordance with the plans, that is, they were not built to the designed grade.

Surface waters flowing from the defendants' parking area via the service road have sufficiently flooded the plaintiff's land on four separate occasions to substantially damage the interior and contents of four apartments and a storage room, namely, on July 9, 1955, June 13, 1959, June 10, 1961, and on August 26, 1961. The damages resulting from the last three floods amounted to $7,503.50. This amount was not in dispute. The plaintiff concedes its claim for damages resulting from the 1955 flood is barred by the statute of limitations.

██ Virginia substantially follows the common law regarding surface water. The rule was set forth in the early case of Norfolk and Western Railway Company v. Carter, 91 Va. 587, 22 S.E. 517. It reads as follows:

"Where the common law is in force, as in this state, surface water is considered a common enemy, and the

courts agree that each landowner may fight it off as best he may. * * * This right * * * may not be exercised wantonly, unnecessarily, or carelessly; but is modified by that golden maxim of the law, that one must so use his own property as not to injure the rights of another. * * * The right, thus modified, has also its exceptions. One exception is that the owner of the land cannot collect the water into an artificial channel or volume and pour it upon the land of another, to his injury."

■ Subsequent Virginia cases [1] covering various facets of the subject, continue to follow the rule as enunciated in the Norfolk and Western Railway case, supra. Applying the facts in this case to the rule thus established, the Court finds the defendant Shopping Center collected the surface water that fell upon its land in an artificial volume and poured it upon the land of its neighbor (Willston Apartments), to its injury. Here the surface water was collected on the paved parking area and channeled in increased volume to the curbed service road. This was accomplished by grading the paved area so that a substantial amount of the accumulated surface water flowed down the exit and entrance lanes of the parking lot to the service road. True, the drainage system for the parking lot was designed to intercept this accumulated surface water and carry it by grates and pipes to the 1,700,000-gallon reservoir or catch basin located on the defendant's land. However, it failed to accomplish that purpose on at least four occasions.

Here the defendant did not fight off, restrain or divert the surface water which accumulated on adjacent lands from falling rain or melting snows, as the law permits. Instead, it collected and diverted the surface water falling on its land via an artificial channel (improperly graded paved parking lot) to the land of another. It is liable in damages for injury resulting therefrom.

■ There is insufficient evidence to support the defendant's contention that a perceptible portion of the plaintiff's damages was occasioned by surface water originating from other unknown sources; therefore judgment will be entered for the plaintiff in the amount of $7,503.50, together with its costs in this behalf expended.

■ The plaintiff further seeks a permanent injunction enjoining and restraining the defendant from causing or permitting surface water falling on its land to flow upon the plaintiff's land, and for an order requiring the defendant to take whatever action is necessary to remedy the condition causing the flooding of the plaintiff's land. These prayers will be denied.

The damages sustained are far from being irreparable and the flooding complained of is not sufficiently recurring to warrant injunctive relief.

Counsel for the plaintiff should prepare an appropriate order in accordance with these findings and conclusions, submit it to counsel for the defendants for approval as to form, and it will be entered accordingly.

1. Third Buckingham Community v. Anderson, 178 Va. 478, 17 S.E.2d 433 (1941); Mason v. Lamb, 189 Va. 348, 53 S.E.2d 7 (1949); Howlett v. City of South Norfolk, 193 Va. 564, 69 S.E.2d 346 (1952); Hodges Manor Corp. v. Mayflower Park Corp., 197 Va. 344, 89 S.E.2d 59 (1955); Washington Golf & Country Club, Inc. v. Briggs & Brennan Developers, Inc., 198 Va. 586, 95 S.E.2d 233 (1956).