## Richmond

SEVENTEEN, INC. v. PILOT LIFE INSURANCE COMPANY.

June 10, 1974.

Record No. 730394.

Present, All the Justices.

*David K. Sutelan; Edward L. Breeden, Jr. (William C. Walker; Breeden, Howard & MacMillan,* on brief), for appellant.

*J. Hume Taylor, Jr.,* for appellee.

Cochran, J., delivered the opinion of the court.

Seventeen, Inc. filed an amended bill for an injunction against the City of Chesapeake, Pilot Life Insurance Company, and the State Highway Commissioner, seeking to restrain the defendants, and each of them, from diverting surface water from Pilot's property into a drainage ditch extending across

Seventeen's property. The trial court, without hearing evidence and without setting forth in the record the basis for its ruling, granted motions to dismiss filed by the City and the State Highway Commissioner and sustained a demurrer filed by Pilot that was treated as a motion to dismiss. We granted Seventeen an appeal limited to consideration of the trial court's action in dismissing the amended bill as to Pilot.

The material facts alleged in the amended bill for injunction will be accepted as true for purposes of considering Pilot's demurrer. *See Ames* v. *American National Bank*, 163 Va. 1, 37, 176 S.E. 204, 215-16 (1934).

By deed dated July 14, 1958, the Commonwealth of Virginia acquired for highway purposes from the John S. Wise Estate a tract of land, then in Norfolk County, but now in the City of Chesapeake, "together with the right to construct and maintain drain ditch as indicated on plans and containing 3.26 acres, more or less, land . . . ." A plat attached to the deed showed that the parcel acquired in fee simple by the Commonwealth was bounded on the north and south by the residue of the Wise lands. The plat also showed a "10' easement to be acquired for necessary clean-out & future maintenance of outfall ditch." As shown on the plat the existing drainage ditch, in which drainage water flowed in a southerly direction, was severed by the proposed highway. The portion of the ditch lying north of the highway was shown to be two feet in width. The southern portion of the ditch was of unspecified width. The plat shows that the two segments of the ditch were to be connected by an 18-inch pipe installed under the highway. The southern segment was to carry off water flowing south through the pipe and west from a proposed intersecting ditch running parallel to the highway. The intersecting ditch was to receive water from the road surface and from a 15-inch pipe to be installed under the highway. Both pipes, which were designed to carry water south from the Wise lands lying north of the highway, and the intersecting ditch were to be located entirely on the land acquired in fee simple by the Commonwealth.

The deed also provided as follows:

"The said grantor covenants and agrees for himself, his heirs and assigns and successors, that the considerations hereinabove mentioned and paid to him shall be in lieu of any

and all claims to compensation and damages by reason of the location, construction and maintenance of said highway, including such drainage facilities as may be necessary."

The drainage easement granted to the Commonwealth now extends across a 2.32 acre tract acquired by Seventeen from the Wise Estate in 1966 and located on the south side of the highway (State Route 17-A).

On August 30, 1971, Pilot acquired a tract of land, formerly a part of the Wise lands, on the north side of the highway opposite Seventeen's property. Prior to this transaction Pilot's predecessor in title had submitted to the City of Chesapeake a site plan wherein it proposed to construct a shopping center on the tract. The plan showed that the surface water from the shopping center would be channeled through underground conduits into an enlarged drainage pipe under State Route 17-A, thereby causing an increased quantity of water to flow into the drainage ditch across Seventeen's property.

The City of Chesapeake approved the proposed site plan, and the City and Pilot's predecessor in title, with the approval of the State Highway Commissioner, replaced the 18-inch pipe with a 48-inch pipe to accommodate the larger volume of water. Seventeen then filed its bill for injunction, subsequently amended, alleging that the increased volume of water would cause irreparable damage to its property and seeking to restrain Pilot and the other defendants from diverting into the drainage ditch a larger quantity of drainage water than was contemplated at the time the easement was granted or from increasing the burden or servitude upon Seventeen's lands.

The substance of Pilot's demurrer is that the amended bill fails to state sufficient grounds for equitable and injunctive relief against Pilot and that Seventeen has an adequate remedy at law. The chancellor's failure to give a reason for dismissing the amended bill, an omission that should be avoided by trial courts, requires us to determine whether there is any valid ground upon which the ruling may be sustained. We can find none.

Seventeen stated a cause of action against Pilot sufficient to withstand a demurrer or motion to dismiss. In the absence of a contractual or statutory privilege to collect surface water and to divert it onto Seventeen's land, Pilot may be held liable for

doing so. Under the common law rule surface water is considered a common enemy that may be fended off by each landowner. But the rule is subject to modification in Virginia that one must so use his property as not to injure unnecessarily the property of another. The privilege to protect one's property against surface water must be exercised reasonably and in good faith and not wantonly, unnecessarily, or carelessly. The modified common law doctrine is also subject to exceptions, one of which is that a landowner may not collect surface water into an artificial channel and pour it upon the land of another to his injury. *Norfolk & Western R. Co.* v. *Carter*, 91 Va. 587, 591-93, 22 S.E. 517, 518-19 (1895). *See also Hodges Manor Corp.* v. *Mayflower Corp.*, 197 Va. 344, 346-47, 89 S.E.2d 59, 61 (1955); *Howlett* v. *South Norfolk*, 193 Va. 564, 568-69, 69 S.E.2d 346, 348-49 (1952); *Third Buckingham, Etc.* v. *Anderson*, 178 Va. 478, 484-87, 17 S.E.2d 433, 435-36 (1941); *Note, Surface Water Law in Virginia*, 44 Va. L. Rev. 135, 147-50 (1958).

In *Third Buckingham, supra,* we upheld an award of damages against developers of an apartment complex who had installed an artificial drainage system which collected surface water from their property and discharged it from a 2-foot pipe located within a few inches of the plaintiff's land. And in *Hodges Manor, supra,* we affirmed a judgment against a subdivision developer which had installed an artificial drainage system for its land and had discharged the collected waters onto the plaintiff's land through two 18-inch pipes. There, as in the present case, the developer installed the discharge pipes under a state highway which separated the properties, replacing a smaller pipe which could not accommodate the increased volume of surface water collected by the new drainage system.

Pilot contends, however, that it has the privilege of increasing the burden of the drainage easement across Seventeen's land by virtue of the 1958 deed from the Wise Estate to the Commonwealth. We disagree. Pilot was not a party to the deed, and the deed contains no indication that its release provisions, if effective, should inure to Pilot's benefit. Moreover, there is nothing in the deed to show an intent that the easement should provide for drainage of more water from Pilot's land than that naturally flowing south, through the two-foot ditch and otherwise, before the highway was constructed. The language in the deed has reference to such drainage systems as may be

necessary "by reason of the location, construction and maintenance of said highway," and not to such drainage systems as may be required by improvements made on Pilot's property. The drainage easement was not intended to accommodate additional quantities of surface water artificially accumulated and channeled from Pilot's property into the drainage ditch.

The circumstances existing at the time the deed was executed may be considered in determining the intent. *Ellis* v. *Commissioner*, 206 Va. 194, 202, 142 S.E.2d 531, 536 (1965); *Rucker* v. *Gregory*, 191 Va. 697, 705, 62 S.E.2d 221, 225 (1950). The plat attached to the 1958 deed shows that the tract therein conveyed for highway purposes was bounded on the north and south by farm land, some cleared and some wooded, belonging to the Wise Estate. It is reasonable to infer that the parties did not contemplate that the easement would be used to accommodate the drainage requirements of future urban development on land of the Wise Estate lying north of the highway.

■ In its demurrer Pilot asserted that it was immunized from liability by the City's approval of the proposed drainage system. But the City had no power to legalize Pilot's trespass upon the lands of Seventeen. *See Segaloff* v. *City of Newport News*, 209 Va. 259, 163 S.E.2d 135 (1968). Hence, the demurrer could not have been sustained on this ground.

Pilot, relying on *Clayborn* v. *Camilla, Etc., Coal Co.*, 128 Va. 383, 105 S.E. 117 (1920), maintains that the trial court's action in refusing injunctive relief to Seventeen should not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. This rule, which presupposes a hearing on the merits, is inapplicable to the present case. Here the trial court has dismissed on the pleadings alone, so that Pilot does not have the benefit of a ruling in its favor which has resolved disputed questions of fact or balanced the equities.

Seventeen's allegations, if proved, state a sufficient ground for injunctive relief. The right to proceed in equity for an injunction against the unlawful use of an easement is well settled. *Robertson* v. *Bertha Mineral Co.*, 128 Va. 93, 104 S.E. 832 (1920). And a court of equity may enjoin a continuing trespass in order to avoid a multiplicity of actions at law, even when each act of trespass is trivial or the damage is trifling and despite the fact that no single trespass causes irreparable injury. *Boerner* v. *McCallister*, 197 Va. 169, 171-72, 89 S.E.2d 23, 25 (1955).

Since Seventeen alleged in effect that Pilot has engaged in a continuing trespass by discharging artificially accumulated surface waters in unauthorized quantities into the drainage ditch on Seventeen's property, the trial court had jurisdiction to grant injunctive relief.

Seventeen is entitled to have its claim heard on the merits. If Seventeen proves its allegations, an award of an injunction will be subject to the chancellor's discretion. An injunction will not issue in every case of nuisance or continuing trespass, for in determining the relief to be granted the chancellor must consider the interests of the parties and of the public. *Akers* v. *Mathieson Alkali Works*, 151 Va. 1, 8-10, 144 S.E. 492, 494 (1928). If the harm that an injunction would cause to the defendant would be out of proportion to the injury the plaintiff seeks to remedy, a court of equity may properly deny injunctive relief. *Id.; Clayborn* v. *Camilla, Etc., Coal Co., supra.*

The case will therefore be reversed and remanded for proceedings consistent with this opinion. If the chancellor finds that Pilot's conduct was actionable but, in his discretion, denies injunctive relief, Code § 8-138 will require that the case be transferred to the law side of the court so that Seventeen may recover any damages to which it is entitled.

*Reversed and remanded.*