# Richmond.

## August G. Schultz and George S. Bigbie v. Samuel R. Carter.

January 16, 1930.

Absent, Chichester, J.

The opinion states the case.

*Isador Shapiro*, for the appellants.

*Robert T. Winston* and *Andrew J. Ellis*, for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

Carter, the appellee, brought this suit against Schultz and Bigbie, praying for an injunction to restrain them from fishing in or exercising any rights of ownership in a certain fish pond owned by Carter. The trial court granted the prayer of the bill, and it is from this decree that this appeal is taken.

The antecedent facts out of which the litigation grew are these: In 1912, Charles E. Garrett, to whose title the appellee, Carter, has succeeded, and H. K. Fox, under whom the appellants claim, were the respective owners of two adjacent tracts of land. There was no pond then in existence, and hence there were no fishing rights. Garrett wished to build a fish pond on his own land, and in order to do so without violating any of the rights of Fox it became necessary for him to acquire water rights and the right to overflow two acres

of the adjoining tract then owned by Fox. Thereupon H. K. Fox, unmarried, executed a deed to Garrett, dated March 27, 1912, which was acknowledged April 8, 1913, and duly recorded in Hanover county on August 26, 1916. This deed recited that "whereas the party of the second part (Garrett) is erecting a fish pond on his property and which affects properties adjacent thereto which include part of the land of the party of the first part (Fox), and whereas the party of the second part is desirous of obtaining the water rights on such land as may be overflowed on account of said pond; * * *." Then follows the statement that in consideration of $200.00 the party of the first part grants to Garrett with general warranty "the use without interruption of all water rights on that certain tract of land lying and being in Hanover county, Virginia, about two miles from Ellerson station, containing two acres and bounded as follows: ". Then there is a careful description of the two acres by metes, bounds, courses and distances. This description is followed by this provision: "It is hereby agreed and understood that this conveyance is made upon the express condition that the grantor reserves the right to fish in the pond which is proposed to be established as above set forth, and that it is further understood and agreed between the parties to this contract that should the pond be destroyed or the land herein mentioned be not covered with water, that the grantor herein shall have the right to work the same."

The defendants answered the bill, claiming that as successors in title to all of the rights of Fox in the adjacent land as well as to the two acres flooded by water, they had succeeded to all the rights of Fox, including the right to fish in the pond.

The bill and answer present the issue to be determined, and require a construction of the deed from Fox to Garrett.

As is said in *Whitehurst* v. *Burgess*, 130 Va. 577, 107 S. E. 630, 632: "It is a fundamental rule that in the construction of deeds the object of the court is to ascertain the true intention of the parties, and that in order to ascertain this intention, all parts of the deed should be taken and considered together."

The principles of this accepted general rule are thus summarized in 2 Michie's Digest, Cum. Supp., pages 467–8: "In the construction of a deed the purpose is to ascertain the intention of the parties as gathered from the language of the whole instrument, and when so ascertained to give effect to such intention, unless to do so violates some principle of law inconsistent therewith. * * *

"In deeds as well as in wills the intention of the maker of the instrument, as gathered from all its parts, must prevail unless that intention is contrary to law. * * *." When such intention clearly appears by according to the words used their natural meaning, no rules of construction should be invoked to defeat that intention. Where the language is obscure and doubtful, it is frequently helpful to consider the surrounding circumstances and probable motives of the contracting parties. *Gordon Metal Co.* v. *Kingan & Co.*, 132 Va. 236, 111 S. E. 99.

Bearing these rules in mind and referring to the deed and the surrounding circumstances thereby shown, we are bound to conclude that at the date of the deed there was no pond on Fox's land and therefore he did not have any fishing rights therein. For a valuable consideration he granted, with general warranty, the use of all of the water rights, without interruption, on

the two acres to Garrett. The consideration was substantial because twelve years later Fox sold the adjacent tract of fifteen acres to the appellants for $1,000.00. It is observed also that the grant to Garrett covers only the water rights and not the land, because Fox remained the owner of the two acres of land in fee simple, subject only to Garrett's right or easement of flooding it. At the same time Garrett became the sole owner of the water on the flooded area, subject only to the right of Fox to fish in the pond. These conclusions seem to us to be so obvious as to need no elaboration.

Much is said in the briefs as to the distinction between reservations and exceptions, and a number of cases are cited. We think it only necessary to cite *Terry* v. *Tinsley*, 140 Va. 246, 124 S. E. 290, 292, where among other things this is said: "The presumption which arises upon a conveyance of land, followed by words intended to qualify the grant, is that the restrictive words create a reservation, or a new right, rather than exception from the grant by which the grantor preserves or retains his pre-existing right and title. It has been frequently said that in such conveyances the words 'reserved' and 'excepted' are used interchangeably, or synonymously, and to determine their effect in the particular case the surrounding circumstances must be considered.

"Another rule, which however is not to be invoked to nullify language which is plain, is that such reservations are construed most strongly against the grantor. The recent and correct tendency is to disregard the technical distinctions between 'reservations' and 'exceptions' and to construe the language employed so as to effectuate the intention of the parties."

In this deed, Fox undertook to express the reservation of a right (which he had anyhow) "that should the pond be destroyed or the land herein men-

tioned be not covered with water that the grantor herein shall have the right to work the same." He could not, however, because of the very nature of the transaction, reserve the right to fish, because he had no such right to reserve. This right to fish was primarily in the owner of the water in the pond, Garrett, and the true effect and meaning of the words of the deed, as to the clause here involved, is that Garrett accepted the grant and agreed to permit Fox to fish in his pond. This was a mere concession from the grantee as an inducement to the grantor. This privilege does not depend upon the ownership of the other land of Fox, did not inhere in or issue out of such other land, and its exercise does not in any wise depend upon such ownership.

The most pertinent cases affecting situations somewhat similar are *Boyd* v. *Colgan*, 126 Kan. 497, 268 Pac. 794, 796, and those cited in the quotation from the opinion in that case. There the contract under consideration was a lease of hunting and fishing rights, and the court held that the grant was personal and that the grantee or lessee had no right to permit others to hunt or fish on the premises, and in support of this conclusion it is said: "In *Isherwood* v. *Salene*, 61 Ore. 572, 123 Pac. 49, Ann. Cas. 1914B, 542, and note, 40 L. R. A. (N. S.) 299, it was held that the grant of a profit *a prendre* such as the right of hunting over the land of another must be strictly construed and cannot be extended beyond the express terms of the grant.

"In *Mallet* v. *McCord*, 127 Ga. 761, 56 S. E. 1015, the ancestor of the defendant had sold to somebody through whom plaintiff claimed the right in perpetuity to maintain a dam for a mill pond on the grantor's land, reserving to himself the right to fish in the mill pond. It was held that the reserved right to fish in

the pond was personal and was neither assignable nor inheritable, and defendant's claim of right to fish in the pond was denied. See also *Council* v. *Sanderlin*, 183 N. C. 253, 111 S. E. 365, 32 A. L. R. 1527; 27 C. J. 943; 12 R. C. L. 689, 690.''

To sustain the contention of appellants in this case would result in the diminution and possibly in the destruction of the value of the private rights of the appellee, Carter. He is now the sole owner of the private fish pond constructed by Garrett. If Fox had the right to transfer to his grantees, the appellees here, his privilege of fishing in that pond, then they can in turn convey and subdivide their land and vest their several grantees with similar rights, or they can convey to a fishing club with unlimited membership, and the club may vest each of its members with that right, and so on without limit, unless perhaps the rule of reasonableness should be invoked. It seems to us quite evident, then, that the true construction of this deed is that the right assured to Fox to fish in the pond was clearly a mere personal privilege—a right in gross which is neither assignable nor inheritable.

The decree of the trial court, however, went beyond the pleadings and undertook to determine that the privilege of Fox was limited to fishing in the waters which flooded the two acres of land described in his deed. Fox was not a party to this proceeding and hence the court had no jurisdiction to determine any of his rights.

The decree appealed from will be amended so as to omit the recital that the right of H. K. Fox to fish in the pond is confined to the water over the two acres of land in the deed mentioned and conveyed, and as thus amended will be affirmed.

*Amended and affirmed.*