# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

ELIZA R. BELVIN'S EXECUTOR, ET AL. V. J. ALLAN
BELVIN, ET ALS.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*John H. Bocock* and *McGuire, Riely & Eggleston*, for the appellants.

*Bernard Meredith*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

Appellants, First and Merchants National Bank of Richmond and May Belvin Kruse, executors under the will of Eliza R. Belvin, deceased, and May Belvin Kruse in her own right, filed their bill of complaint against J. Allan Belvin and others, devisees under the will of Eliza R. Belvin.

The object of the suit was to have the court construe the following trust deed executed by Eliza R. Belvin to the American Trust Company of Richmond:

"This deed made this 26th day of June in the year 1928, between Eliza R. Belvin and Preston Belvin, her husband of the City of Richmond, Virginia, parties of the first part, and American Trust Company of Richmond, Virginia, Trustee as hereinafter set forth, party of the second part, WITNESSETH that for Ten Dollars ($10.00) and other good and valuable consideration said parties of the first part do grant and convey with General Warranty unto said party of the second part:

"That parcel of land in the City of Richmond, Virginia, situated on the northern line of Monument Avenue, between Robinson and Mulberry Streets, together with all the improvements on said parcel and appurtenances thereto belonging, known as Belvin Court, Nos. 2602, 2604 and 2606 Monument Avenue, and bounded as follows, to-wit:

\* \* \* \* \*

"(1) Said Trustees shall take the control and management of said property receiving all the income and profits therefrom and paying all the taxes and other charges thereon, keeping the said property adequately insured against fire and making all needful repairs to said buildings but during the lifetime of said Eliza R. Belvin it shall be permissible for said Trustee to comply with its aforesaid duties by allowing said Eliza R. Belvin to remain in possession and control of said property, and likewise after her death and during the life of said Preston Belvin by allowing said Preston Belvin to remain in possession and control of said property:

"So long as said Eliza R. Belvin may live she shall be entitled

to receive all the net income and rents from said property, and

"(3) At her death said Preston Belvin for his lifetime shall be entitled to receive all the net income and rents from said property, and

"(4) Upon the death of the survivor of said grantors said Trustee shall hold and manage the said property in trust as to One-third (1/3) thereof for J. Allan Belvin, son of the grantors, for the lifetime of said J. Allan Belvin, with remainder at the death of said J. Allan Belvin to the children born now or born hereafter of said J. Allan Belvin for their lifetime and to the survivors or survivor of said children for life and with remainder upon the death of the last survivor of said children to the issue of said children then surviving *per stirpes* and not *per capita;* and in trust as to another One-third (1/3) thereof for May Belvin Kruse, daughter of the grantors, for her lifetime and should she die leaving issue her surviving then to her said issue *per stirpes* but should she die without issue then for said J. Allan Belvin for his lifetime and at the death of said J. Allan Belvin to the children born now or born hereafter of said J. Allan Belvin for their lifetime and to the survivors or survivor of said children for life and with remainder upon the death of the last survivor of said children to the issue of said children then surviving *per stirpes* and not *per capita;* and in trust as to the remaining One-third (1/3) thereof for Preston Belvin, Junior, son of the grantors, for life upon the condition that said Trustee do apply the net income from this last-named One-third (1/3) share in said property to the maintenance and support of said Preston Belvin, Junior, for his life without being subject to his liabilities or to alienation by him and with remainder at the death of said Preston Belvin, Junior, should he leave issue him surviving born of his present marriage with Elizabeth R. Belvin then to said issue *per stirpes* but should he leave no such issue him surviving then to said J. Allan Belvin for his life with remainder at the death of said J. Allan Belvin to the children born now or born hereafter of said J. Allan Belvin for their lifetime and to the survivors or survivor of said

children for life and with remainder upon the death of the last survivor of said children to the issue of said children then surviving *per stirpes* and not *per capita.*

"(5) Express authority and power is hereby given to said Trustee to mortgage or convey in trust said property for the purpose of paying off and discharging any mortgage or deed of trust now resting on said property and to execute such notes or bonds as may be necessary to evidence the principal and interest of the sum borrowed by it for said purpose; and should said Trustee deem it advisable and to the advantage of the beneficiaries of this trust to sell and convey said property for the purpose of discharging and paying off any mortgage or deed of trust now resting on said property it shall have full power and authority to make such sale and conveyance and without liability on the purchasers to see to the proper application of the purchase price and the residue of the purchase price remaining in its hands after the satisfaction of said lien shall be held by it upon the same trusts as rest upon the real estate itself and is to be invested and kept invested by the Trustee so long as this trust may continue in income-yielding securities deemed by it to be safe and sound.

'(6) Should said Trustee at any time during the existence of this trust deem it to the advantage of the beneficiaries of this trust to sell and convey said property for the purpose or otherwise investing the proceeds of the sale to be held on the same trusts it shall have full power and authority so to do and without liability on the purchasers to see to the proper application of the purchase price and the proceeds of any such sale shall be invested and kept invested by it during the existence of this trust in income-yielding securities deemed by it to be safe and sound.

"(7) Having reference to the Fourth Clause hereof in the event that at the death of the last survivor of the life-tenants mentioned in that clause the said property shall not have been sold under the terms hereof and that any person having an interest or share in said property at that time should be a minor said Trustee shall have full power and authority to sell and convey said property for the purpose of dividing the

proceeds of the sale amongst the persons that may be then entitled to said property and without liability on the purchasers to see to the proper application of the purchase price.

"WITNESS the following signatures and seals.

"(Signed) Mrs. Eliza R. Belvin, (Seal)
" Preston Belvin, (Seal)."

mately to $15,000, to May Belvin Kruse as residuary legatee.

It is the contention of appellants that the trust deed of June 26, 1928, conveyed the equity of redemption only, and there-

Prior to the execution of the aforesaid trust deed Mrs. Belvin and her husband had executed a deed of trust to the American Bank and Trust Company, to secure the sum of $50,000 evidenced by negotiable notes payable to the holder thereof.

At the time of the institution of this suit, $20,000 of this indebtedness had been paid and the balance thereof is due the Life Insurance Company of Virginia. It is conceded that the Life Insurance Company of Virginia is merely a nominal party defendant and is not concerned in the outcome of this suit.

bequeathed all the residue of her property, amounting approx-

Mrs. Eliza R. Belvin died on the 22nd day of August, 1932, leaving a last will and testament which provided for the payment of all of her debts, and then, after a few minor bequests, fore, the trust estate should first be subjected in order to satisfy the lien of the notes held by the life insurance company.

The contention of the appellees is that the amount secured by the prior deed of trust is clearly and unequivocally a debt of Eliza R. Belvin, and that her personal estate should be first exhausted before resorting to a sale of the real estate.

The chancellor sustained the contention of appellees and decreed "that the entire personal estate of Eliza R. Belvin, deceased, is primarily liable for the payment of all her debts, including the aforesaid first mortgage notes * * * now in the possession of the aforesaid Life Insurance Company of Virginia."

This also is contained in the decree:

"And it is further adjudged, ordered, and decreed that the beneficiaries under the will of the said Eliza R. Belvin will not be entitled to subrogation as against the real estate heretofore mentioned for any amount so paid by the Executors on the aforesaid notes of Eliza R. Belvin, deceased."

That holding of the chancellor is assigned as error, on the ground "that the decision as to subrogation is premature and advisory only."

■ ■ The assignment of error is not well founded, for the reason that the prayer of the bill of complaint seeks not only construction of the deed of 1928, but a direction by the court as to the proper administration of the estate of Eliza R. Belvin.

If the conclusion of the chancellor is correct on the proposition that the personal estate is primarily liable for the payment of the debt, then there is no reason to invite future litigation by withholding a decision on the question of subrogation. It is the duty of the courts to end controversies when it is possible to do so, and under the specific prayer of the bill as to direction of the executors in the administration of the estate, as well as under the prayer of general relief, the chancellor was warranted in passing upon the question.

The remaining assignment of error presents for decision the pivotal question, did the chancellor err in decreeing that the personal estate of Eliza R. Belvin is primarily liable for the payment of her debts, including the debt secured by the deed of trust of 1928?

■ In *Todd* v. *McFall*, 96 Va. 754, 757, 32 S. E. 472, Judge Riely has laid down the rule dealing with the particular estate of a decedent primarily liable for the payment of his debts. There it is said:

"It is universally conceded that as a general rule the personal estate is not only the primary, but the only fund for the payment of legacies. It is equally a general rule that the real estate is not chargeable under the law with their payment, if the personal estate proves insufficient, unless the testator has charged the land with their payment. This he may do either in express terms or by implication, but his intention to do so must be clear and manifest. And so in every

case, whether the real estate is charged with the payment of legacies is a question of intention. The intention to charge must be either expressly declared, or be deducible from the language and dispositions of the will."

The doctrine above stated has been repeatedly affirmed by this court. See *Marcy* v. *Graham*, 142 Va. 285, 128 S. E. 550, and authorities therein cited.

While it is true that in *Todd* v. *McFall, supra,* the court was not dealing with a case where the transfer of such encumbered land had been made by deed, as we are now doing, yet we can perceive no distinction between the case of a transfer by will and that of a transfer by deed.

We think this lack of distinction is settled by the case of *Roberson* v. *Wampler,* 104 Va. 380, 384, 51 S. E. 835, 837, 1 L. R. A. (N. S.) 318. There we read:

"In the case of *Stace* v. *Bumgardner, supra* [89 Va. 418, 16 S. E. 252], it was said by Judge Lewis, in delivering the opinion of the court, where it was insisted that a different rule applied in the construction of wills from that which prevailed as to deeds and other contracts, that 'there is, however, no material difference in principle, in the rules of interpretation between wills and contracts, except what naturally arises from the different circumstances of the parties. No technical language is necessary to create a trust either by deed or will, and in both classes of cases the object of the judicial expositor is the same, namely, to discover *the intention* which is to be gathered in every case from the general purpose and scope of the instrument in the light of surrounding circumstances.' "

In construing the trust deed of June 26, 1928, the "polar star" is the intention of the grantors relative to the estate to be conveyed, and the burdens, if any, to be borne by the trust estate. If the language of the deed, or will, does not expressly charge the realty with the payment of a legacy, then the implication to charge the realty must be clearly deducible from the language and dispositions of the deed or will.

In *Lee* v. *Lee*, 88 Va. 805, 14 S. E. 534, Judge Lewis said: "The testator, however, may charge the land, and this may

be done either expressly or by implication; but in any case the intention to charge must be clear—so clear as to admit of no reasonable doubt."

In our opinion, the language employed in the trust deed of June 26, 1928, fails to expressly charge the realty with the payments of grantor's debts. It then follows that in order to sustain a charge upon the realty conveyed, the intention to charge by implication must "admit of no reasonable doubt."

In arriving at a proper conclusion on this phase of the case, we are aided in our consideration by the language of the deed of trust to the American Trust Company, trustee, the will of Eliza R. Belvin, the documentary evidence in the record and the parol evidence adduced by appellees.

In the deed of trust to the American Trust Company, we find this language: "The said Eliza R. Belvin and Preston Belvin, grantors herein, do jointly and severally covenant and agree to pay all of said notes and interest coupons made and signed as hereinafter set forth. The above notes are equally secured by this deed and are authenticated by the certificate of the Trustee endorsed thereon; and the said Grantors hereby waive the benefit of their Homestead Exemption as to the debt hereby secured."

That language signifies, without qualification, that the grantors intended at that time to discharge the debt secured out of their personal assets.

Then, again, in the deed of trust we read: "The amount necessary to redeem all said notes so called and which are presented for redemption, together with interest then due, shall be paid by the Trustee from funds deposited with it or furnished by the Grantors for that purpose, and the notes shall be forthwith surrendered by the said Trustee and cancelled. * * * The money so deposited with the Trustee shall be held by it and applied by it to the payment of said principal notes and interest."

Pursuant to the above stipulation, the record discloses that the Belvins did establish a fund, in part, for the payment of the indebtedness, and that the money deposited with the

trustee has been paid to the life insurance company, holder of the notes.

It is also shown by the evidence of G. A. Peple, vice-president of the trust company, and the officer in charge of the trust department of the banks, that it was the purpose of the Belvins to discharge personally the deed of trust debt.

That it was the intention of Eliza R. Belvin to secure to her children the income from the apartment house conveyed in the trust deed of June 26, 1928, is, we think, made manifest by that provision of the deed which inhibits an alienation of his interest in the property by Preston Belvin, Jr., and exempts the same from his liabilities. If any doubt arises on that score, Mrs. Belvin has put the same to rest. In her will, after directing the payment of her debts, and after bequeathing the residue of her estate to her daughter, May Belvin Kruse, she incorporates this clause in her will: "The income on that part of my estate to be held in trust is intended for the purpose of the respective beneficiaries and shall be available for their use from the date of my death."

While there is some force in the argument of appellants that clause 5 of the trust deed sustains their contention, we cannot escape the conclusion that if Mr. and Mrs. Belvin had intended to convey the trust property subject to the prior lien upon the same, they would have done so in explicit language. Then, again, it seems to us that if Mrs. Belvin had intended to prefer her daughter to the absolute exclusion of her other children, she would have at least indicated such a preference in her last will and testament.

It is our conclusion that the trust deed was merely a guide to the trustee for the conduct of the trust estate, and that the doctrine of exoneration should be applied to relieve the trust estate to the full extent of the personal assets, if necessary.

*Affirmed.*