# Richmond

## Fannie S. Harris and H. Ashby Harris v. Thelma Craig Scott, et als.

January 19, 1942.

Record No. 2450.

Present, All the Justices.

The opinion states the case.

*E. O. McCue, Jr.*, and *Walsh & Waddell*, for the appellants.

*Albert O. Boschen*, for the appellees.

BROWNING, J., delivered the opinion of the court.

This is a controversy over the ownership of a tract of 20 acres of land lying in the county of Fluvanna, Virginia. In 1937, the appellants instituted a suit in chancery to quiet and make firm their title to a tract of land in the said county, on the south side of Adrian's creek, and on the road leading from Braggs Cross Roads to Union Mills, containing 96 acres, more or less, adjoining the lands of the late James H. Harlow, D. R. Boston, Robert Bragg, and others, it having been conveyed by one Benjamin Harlow to M. G. Sclater, by deed dated June 23, 1926, and having passed under the will of said Sclater, and a deed of a life tenant, to the appellants. The tract was described in the above deed as containing 56 acres and as being sold by the boundary and not by the acre.

It appears that the said Benjamin Harlow acquired the land by a deed from the heirs of Hezekiah Harlow, some of whom did not join in the execution of the deed to him and one or

more who signed it but failed to acknowledge it. This was deemed to constitute a cloud on the title of the appellants. Benjamin Harlow's heirs at law, and the heirs at law of those who did not sign the deed, and of those who did not properly execute it, and the heirs at law of those who had died were made parties defendant and required to answer the said bill.

The bill further alleged that the predecessor in title to the appellants, Benjamin Harlow, took possession of the said land under the said deed and held it adversely for more than 15 years and that his successors in title, including the appellants, have likewise so held it. Indeed more than 40 years have elapsed since its acquisition by the said Benjamin Harlow.

The appellees, heirs of Emma Craig, filed their answer to the said bill denying its allegations and setting up their claim, among other things, to a tract of 20 acres of the said land by reason of a deed made September 28, 1921, by Benjamin Harlow to Emma J. Craig. This is the description of the land by which it is said to have passed.

"* * * all that tract of land lying in Fluvanna County, consisting of twenty acres, adjoining H. C. Haden, Benjamin Harlow and others, with general warranty of title. The said twenty acres being a part of a tract of ninety-six (96) acres belonging to said Benjamin Harlow * * *."

The cause was referred to a commissioner who was directed to report, among other things, whether the deed from Benjamin Harlow to Emma Craig, referred to, was effective to convey title to any tract of land, and, if so, of what tract. The commissioner reported that the description of the property to be conveyed was so defective as to be inoperative, and that the evidence taken on behalf of the Craig heirs did not cure the difficulty, that they undertook to claim a tract of land which was surveyed during the progress of the suit as that which was conveyed by the deed in question; that the tract so surveyed could not be the tract which was the subject of the above deed of September, 1921, because that now claimed does not adjoin H. C. Haden at any point, indeed it is located at the opposite end of the larger tract of which the tract in mind is a part.

The appellees filed exceptions to the confirmation of the commissioner's report which were sustained by the court, with the observation that in its (the court's) opinion, the report was erroneous and that the deed which is assailed is a good and valid one and that it conveyed the title to the tract shown by the survey and plat made, during the proceedings herein, by C. E. Watkins, surveyor, of March 28th, 1939. Thus the court adopted a deed, and a plat as its basis, which the makers of the plat, in effect, repudiated as applicable to the land in dispute.

It appears that in 1926, the same surveyor, Mr. C. E. Watkins, surveyed the tract of land, described in the deed of May 1897, from some of the heirs of Hezekiah Harlow to Benjamin Harlow, as containing 96 acres. He was introduced as a witness by the appellees and he was being interrogated by their counsel and was asked this question:

"Q. What did you have to guide yourself with as to the 96 acres?

"A. We had an old plat by some surveyor I don't recall when or who, showing some of the lines, and that was some assistance to us, and there were some marks and some fences, etc. *For instance, H. C. Haden's line was definitely known. * * *"* Italics supplied.

Incidentally the area by this survey was 105 acres. Thus we learn that the H. C. Haden line was definitely known and we note that the Haden land, as contiguous, is the only definite point of description in the deed which the court approved. But this intelligible indicium is absent from the land and the plat which the court had surveyed and gave to the appellees. Let us see what the testimony of the surveyor discloses as to this:

"Q. Now, Mr. Watkins, I will ask you whether or not this tract that you surveyed day before yesterday adjoins at any point the H. C. Haden tract?

"A. No, it is the opposite portion of the land. It does not come anywhere near it.

"Q. So that if a tract were described as adjoining H. C.

Haden in the deed of September 1921, that tract was certainly
not the tract that you surveyed day before yesterday?

"A. It could not be."

When we consider the character of the data or assistance
which the surveyor had in surveying the land in dispute and
making the plat of it we do not wonder at the state of con-
fusion in which the matter is involved. Three lay persons,
relatives and connections of the appellees, went with the
surveyor to show him where the Emma Craig land was and
give him such information as would enable him to survey it.
They were Mr. and Mrs. Wells and Mr. Willie Louis Har-
low. They had no papers of any sort. They knew no
courses nor distances, or marks to indicate corners or any-
thing else. And when the surveyor was asked if they had
anything to identify the particular course which they indi-
cated, he answered, "Nothing, except their memory." He
was interrogated, in this relation, as follows:

"Q. When you came up the road, Mr. Watkins, with the
witnesses, where did they first suggest that the line should
start in reference to the place where you ultimately fixed it?

"A. I think, when we reached a point approximately three
chains, that would be sixty-six yards, from the point that we
ultimately located, they suggested that they were somewhere
near what they had in mind, but they could not pick out an
exact point.

"Q. Couldn't pick out any exact point along the road?

"A. No, but this was getting near.

"Q. But the point ultimately settled on is sixty-six yards
from that first suggested point?

"A. Yes.

"Q. What was said at that time about the 20 acres and
how the point was related to it?

"A. I asked them how much land they were trying to cut
off. They said 20 acres."

The witness further testified that the area of the tract that
he surveyed was 23½ acres, and he was asked this question:

"Q. Can you tell by this survey whether it overlaps any
of that 56 acres that was conveyed by this deed from Ben-

jamin Harlow to Sclater or whether any of the 23 acres overlaps on the 56 acres that was conveyed to Sclater?

"A. It is entirely within the piece of land conveyed to M. G. Sclater, entirely within that piece."

Thus the appellees claimed a tract of land which is embraced on all sides by the 56 acre tract and entirely away from the H. C. Haden tract, which latter is the only sure mark of identification in the deed under which they claim. It is, indeed, an anomaly.

It is of moment, too, that one of the persons who went with the surveyor to point out the land in dispute, Mr. W. T. Wells, introduced by the appellees as a witness, was asked this question:

"Q. Can you describe the 20 acres so that we can put it in the record?

"A. Well, it is supposed to go right down Union Road. It is supposed to join Mr. Clay Haden's."

Thus it becomes confusion, worse confounded.

In *Schultz v. Carter*, 153 Va. 730, 734, 151 S. E. 130, it is said:

"In deeds as well as in wills the intention of the maker of the instrument, as gathered from all its parts, must prevail unless that intention is contrary to law. * * * When such intention clearly appears by according to the words their natural meaning, no rules of construction should be invoked to defeat that intention. Where the language is obscure and doubtful, it is frequently helpful to consider the surrounding circumstances and probable motives of the contracting parties. *Gordon Metal Co. v. Kingan & Co.*, 132 Va. 236, 111 S. E. 99."

And in 8 R. C. L., page 1072, section 127, is this:

"Generally, if the description of the land intended to be embraced and the title thereto conveyed by the deed, is so indefinite or uncertain that it fails to designate or identify the land meant, the deed is inoperative; for a deed, to be valid on its face, requires not only a grantor and a grantee, but also a thing granted, and if the description is too indefinite to convey anything, then the paper on its face lacks one of the

essential elements of a conveyance, for it is essential to the validity of a grant that the thing granted should be so described as to be capable of being distinguished from other things of the same kind. Hence a deed which conveys no particular spot of ground can transfer no title. So, where a line only is given, no land being included, the deed is a nullity, inasmuch as nothing is granted, or where two lines are given, with nothing to show what is embraced; and a grant cannot be located when described as beginning at a stake with nothing further to locate the stake, and the other corners are described as points at the end of course and distance, the same rule applying where no ending or starting point is named."

In the case of *George* v. *Bates*, 90 Va. 839, 841, 20 S. E. 828, we find this:

"And in the case of *Dickens* v. *Barnes*, 79 N. C. 490, the court says: 'A deed conveying land and describing it as "One tract of land lying and being in the county aforesaid, adjoining the lands of A and B, containing twenty acres, more or less," does not constitute color of title, and possession under it is not adverse. Such description is insufficient and cannot be aided by parol proof.' See also, 5 Jones, Eq., 155; *Westfalls* v. *Cottrills*, 24 W. Va. 763; *Clark* v. *Chamberlain*, 112 Mass. 19; *Lumbard* v. *Aldrich*, 8 N. H. 31."

In the case of *Whealton & Wisherd* v. *Doughty*, 112 Va. 649, 655, 72 S. E. 112, this was said:

"Where the claimant of title relies upon a deed of conveyance, it is well settled both by reason and authority that in order to be effective as evidence of title it must either in terms or by reference to other designation give such description to the subject matter intended to be conveyed as will be sufficient to identify the same with reasonable certainty. Warville on Ejectment, sec. 295."

The appellees counter with this contention, which is largely based upon a circumstance that was not before the trial court. A deed from Benjamin Harlow to one Elsie Washington which conveyed to her a tract described in these words:

"A certain tract of land known as Springfield in the county

of Fluvanna containing 20 acres, more or less, and the said land adjoins Emily Harlow, H. S. Hughes and others."

It is ingeniously said that Benjamin Harlow in the beginning owned 96 acres of land, of which he conveyed to the appellees 20 acres, to Elsie Washington 20 acres and to M. G. Sclater 56 acres, which aggregate the original 96 acres. The appellants' reply brief calls this "a rather intriguing statistic." It is our opinion that this is but a coincident which must give way to the facts which we have referred to.

It is said in 2 Devlin on Deeds, section 1044, p. 362:

[■■] "In the description of land, it is usual after the description by metes and bounds or subdivisions, to add a clause stating that the land described contains so many acres. But unless there is an express covenant that there is the quantity of land mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it cannot control the rest of the description."

■■ We are in accord with the report of the commissioner. His finding was eminently sound. The court erred in sustaining the exceptions thereto, and we reverse its decree of November 29, 1940, and remand the case with the direction that a decree be entered overruling the exceptions to the commissioner's report, and confirming the same and for such further proceedings as the court may be advised.

*Reversed and remanded.*