# Richmond

THE CHESAPEAKE CORPORATION OF VIRGINIA v. F. D. McCREERY,
ET AL.

June 13, 1975.

Record No. 740660.

Present, All the Justices.

*Hugh V. White, Jr.; James A. Jones, III (John Paul Causey, Jr.; Hunton, Williams, Gay & Gibson; Sutton & Causey,* on brief) for appellant.

*R. Westwood Winfree (Horace H. Edwards; Mays, Valentine, Davenport & Moore,* on brief), for appellees.

I'Anson, C.J., delivered the opinion of the court.

The Chesapeake Corporation of Virginia (Chesapeake) filed a petition for a declaratory judgment against numerous defendants to determine the location and ownership of a five-acre parcel of land excepted or reserved out of a larger tract conveyed by deed of Joseph H. Harden to Chesapeake. F. D. McCreery and his wife and the State Highway Commissioner were the only parties to the proceedings who filed answers. The McCreerys claimed ownership in approximately 80 percent of the five-acre parcel. The Highway Commissioner did not participate in the hearing of the case.

The parties agreed that the description of the exception or reservation in the deed was ambiguous and that it was necessary to present extrinsic evidence to determine the issues involved. After hearing evidence without a jury, the trial court held that the five-acre parcel extended across the northern portion of the tract conveyed to Chesapeake from the concrete marker in the northeastern corner of Tract $C^1$ to the iron stake at the northwestern corner of the tract; and that the McCreerys and others were the owners of the five-acre parcel.

Chesapeake contends that the court erred in not holding that the purported exception or reservation was void because the five-acre parcel could not be located with certainty, and in not holding that it became the owner of all of Tract C.

On November 12, 1889, Joseph H. Harden purchased a tract of land consisting of 110.65 acres in New Kent County. In 1893 Joseph sold Tract A to Hezekiah Harden, Jr., but he retained a one-half interest in the dwelling house located thereon. Through mesne conveyances, the McCreerys acquired and now own Tract A, together with the appurtenances thereon.

In December 1914 Joseph conveyed Tract B to John W. Harden and Willie E. Harden. The deed of conveyance contained the following clause:

"... and the said party of the first part [Joseph H. Harden] hereby reserves unto himself, his heirs and assigns the right, privilege and authority to use the road through the tract of land hereby conveyed as an outlet from his property to the county road."

The county road referred to in the deed was located east of Tract A. Tract B was ultimately acquired by Chesapeake, and in each deed in

1. See plat on following page which shows the general areas involved and illustrates the claims of the various parties.

THE, CHESAPEAKE COR.P.
ELSWORTH "
MAY 1910

THE CHESAPEAKE CORP
ELSWORTH
5-10

CONCRETE
MONUMENT

HEZEKIAH HARDEN'S
ESTATE

IRON
PIPE

CONCRETE
MONUMENT

JOHN W. HARDEN
&
WILLIE E. HARDEN

A

30 ACRES

DISPUTED
FIVE ACRES

47.40 ACRES

B

THE CHESAPEAKE CORP
ELSWORTH
MAY 1910

THE CHESAPEAKE COR P
ELSWORTH
5-10

C

Concrete
Monument

R. E. RICHARDSON
ESTATE
"OTEYS"

33.25 ACRES

Concrete
Monument

IRON
PIPE    R. E. RICHARDSON EST.
"OLD TOWN"

PLAT I

"OLD TOWN"
129 ACRES

mag N

the chain of title the above clause, or one similar to it, reserved the use of a road across the tract.

In 1930 Joseph conveyed Tract C to Chesapeake. It is the language in this deed excepting or reserving a five-acre parcel out of Tract C that gave rise to the present controversy. The deed describes the property conveyed as follows:

"A certain tract of land containing Thirty Three and Twenty Five Hundredths Acres (33.25), more or less, adjoining the lands of The Chesapeake Corporation, the lands of Mrs. Sarah Harden,[2] and the lands of others. . . ."

Immediately following the above description was this language:

"It is mutually understood and agreed between the parties to this deed that the party of the first part [Joseph H. Harden] hereby excepts and reserves from this conveyance a small parcel of land containing Five Acres (5), which adjoins the lands of the estate of Hezekiah Harden, Jr., deceased, on the West; by the lands of John W. Harden and Willie E. Harden on the East, and on the North and South by the lands of the Chesapeake Corporation.

---

2. Mrs. Sarah Harden was the widow of Hezekiah Harden, Jr.

"The Twenty Eight and One-Fourth Acres (28¼), of land actually conveyed is a portion of an original tract containing 110.65 acres . . . and is the residue of said tract of land after deducting Thirty Acres (30) sold to Hezekiah Harden, Jr., . . . and also Forty Seven and Forty Hundredths Acres (47.40), sold to John W. Harden and Willie E. Harden . . . and the Five (5) acres of land which is herein excepted from this conveyance by the party of the first part [Joseph H. Harden]. . . ."

In 1933 the Commonwealth of Virginia acquired from Chesapeake the portion of Tract C which is now State highway route 608.

The land tax records of New Kent County show that from 1934 through 1938, Chesapeake was the owner of 28.25 acres of Tract C. After 1938 Chesapeake is shown as owning all of Tract C. The same records show five acres of Tract C in the name of Joseph H. Harden from 1931 through 1936. Thereafter, no part of Tract C is shown as owned by Joseph H. Harden or his estate. Harden died in 1941.

Robert F. Brake, a forester for Chesapeake, identified aerial photographs of Tracts B and C taken in 1937, 1943, 1953, and during the 1960's. He testified that the two early photographs show that Chesapeake had completely removed the timber from Tracts B and C, and that the areas had been replanted mechanically; and that the aerial photograph taken in 1953 shows that the trees planted had continued to mature, but that the old road running across Tract B to Tract C was still visible.

Meaco Woodson, a lumberman who had lived and worked in the local area for 64 years, testified that he had cut timber for Chesapeake on Tract C on both sides of route 608, and that neither Joseph H. Harden nor any of his heirs made any complaint to him.

During 1970 McCreery acquired approximately 80 percent of the interest in the five-acre parcel from the heirs of Joseph H. Harden. He testified that the road over which Joseph H. Harden reserved a right of way in the 1914 deed extended across the northern portion of Tract B to Tract C; that this road continued across the northern portion of Tract C and connected with "a county road on the west, leading to Chris-Cross"; and "that was the road they [the Hardens] used to go to Chris-Cross."

McCreery also testified that when Tract B was surveyed in 1912, a concrete monument was placed in the northeast corner of Tract C

by Joseph H. Harden. He said that an iron stob was at the northwest corner of Tract C.

William H. Redd, a surveyor who was employed by McCreery to fix the location of the five-acre parcel, surveyed the land and laid off the five acres across the entire northern boundary of Tract C with enough depth to make five acres. Redd concluded from the language in the deed and his observations on the ground that the northern boundary of the property was the most logical and reasonable area of the five-acre parcel. Redd admitted, however, that it was possible the five-acre parcel could extend from north to south along the western line of the property formerly owned by John W. Harden and Willie E. Harden.

After the McCreerys acquired their interest in the five-acre parcel, two of Joseph Harden's heirs conveyed all their right, title and interest in Tract C to two parties who made no appearance in this proceeding. Those deeds described the five-acre parcel as lying west of State highway route 608.

█ A deed conveying land must give such a description of the property intended to be conveyed as will be sufficient to identify it with reasonable certainty. *Harris v. Scott*, 179 Va. 102, 109, 18 S.E.2d 305, 308 (1942); *Butcher v. Creel's Heirs*, 50 Va. (9 Gratt.) 201, 203 (1852). The same principle is applicable to the description excepting or reserving certain property from the operation of a conveyance. If the land excepted or reserved cannot be determined with reasonable certainty, the exception is void and the grantee is vested with title to the entire tract described, including the part sought to be excepted. *Butcher v. Creel's Heirs, supra,* 50 Va. (9 Gratt.) at 203; Annot., 162 A.L.R. 288 (1946).

The technical distinction between reservations and exceptions is usually disregarded in order to effectuate the intention of the parties. *Shultz v. Carter*, 153 Va. 730, 735, 151 S.E. 130, 131 (1930); *Terry v. Tinsley*, 140 Va. 240, 246, 124 S.E. 290, 292 (1924).

The main task of a court in construing a deed is to ascertain the true intention of the grantor as drawn from the entire instrument. *See Ellis v. Commissioner*, 206 Va. 194, 202, 142 S.E.2d 531, 536 (1965); *Fitzgerald v. Fitzgerald*, 194 Va. 925, 929, 76 S.E.2d 204, 207 (1953).

When the description in a deed is ambiguous and uncertain, extrinsic evidence of the surrounding circumstances and probable motives of the contracting parties at the time of the conveyance is ad-

missible to show intent. *Harris* v. *Scott, supra,* 179 Va. at 108, 18 S.E.2d at 307; *Shultz* v. *Carter, supra,* 153 Va. at 734, 151 S.E.2d at 131. *See also Seventeen, Inc.* v. *Pilot Life,* 215 Va. 74, 78, 205 S.E.2d 648, 652 (1974).

The burden of proof was on the McCreerys to prove the location and ownership of the five-acre parcel.

In the present case it clearly appears that Joseph H. Harden intended to convey only 28¼ acres of Tract C to Chesapeake and that he intended to except five acres of the 33.25-acre tract.

The clause in the deed describing the excepted five-acre parcel as adjoining the land of the estate of Hezekiah Harden, Jr., on the west, was clearly erroneous on its face. The southern boundary was also erroneous because before the deed was executed Chesapeake did not own any land on the south of Tract C. Thus, the description was ambiguous and extrinsic evidence was permissible to ascertain from the deed and by parol evidence the probable motives and intention of the parties at the time of the conveyance.

The evidence shows that the old road running across Tract B was on the northern portion of that tract, and that the road connected with the road across the northern portion of Tract C. This road provided access from Tracts C and B to Joseph H. Harden's home on Tract A and the county road on the east and the county road to the west of the original 110.65-acre tract owned by Joseph H. Harden. It can reasonably be concluded that Joseph H. Harden intended to reserve or except five acres of the land extending across the northern area of Tract C from the concrete monument at the northeast corner of the tract to the iron stake at the northwest corner, which would give him access to his home and both county roads.

It is clear from the language used in Joseph H. Harden's deed to Chesapeake that the five-acre parcel was bounded on the north by the land of Chesapeake and on the east by the land formerly owned by John W. Harden and Willie E. Harden. While it is true that before the deed was executed Chesapeake did not own any land adjoining Tract C on the south, and this call was erroneous, it may reasonably be concluded, however, that Joseph H. Harden intended that the excepted five acres out of Tract C would be bounded on the south by the land of Chesapeake as a result of his conveyance of the 28¼ acres out of Tract C.

It is possible, as stated by surveyor Redd, that the five-acre tract could have been bounded on the north by the land of Chesapeake

and its eastern boundary extended from north to south along the entire western boundary of the land formerly owned by John W. Harden and Willie E. Harden. But surveyor Redd stated that he was able, from his observations on the ground and the language of the deed, to determine with reasonable certainty that the five acres extended across the entire northern portion of Tract C.

We hold that the evidence supports the factual findings of the trial court, and the decree is

*Affirmed.*