## Richmond

## F. D. McCreery, Et Al.

### v.

## The Chesapeake Corporation of Virginia

August 30, 1979.

Record No. 771496.

Present: All the Justices.

*R. Westwood Winfree* (*Horace H. Edwards; D. Eugene Webb, Jr.; Mays, Valentine, Davenport & Moore,* on briefs), for appellants.

*Jack E. McClard* (*R. Kenneth Wheeler; John Charles Thomas; Hunton & Williams,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

This appeal is a sequel to *Chesapeake Corp.* v. *McCreery,* 216 Va. 33, 216 S.E.2d 22 (1975), in which we affirmed the decree of the trial court in a declaratory judgment proceeding that determined the location and ownership of a certain five-acre parcel of land in which F. D. McCreery had acquired approximately an 80 percent interest.

In the present case, The Chesapeake Corporation of Virginia (Chesapeake) filed a bill of complaint against McCreery and his wife seeking an injunction to prohibit them from using a roadway which they had constructed across land of Chesapeake lying adjacent to the five-acre parcel, together with damages for destruction of property. After considering various deeds and plats and the evidence adduced at an *ore tenus* hearing, the trial court ruled in favor of Chesapeake. By final decree entered August 8, 1977, the court declared the easement claimed by the McCreerys to be extinguished, permanently enjoined them and their successors in title from further trespass upon Chesapeake's land, and ordered the McCreerys to pay damages to Chesapeake in the amount of $1,402, with interest from the date of entry of the decree. The McCreerys have appealed, contending that the trial court failed to construe properly the language in three deeds which, they say, reserved to them the easement of right-of-way to which they claim to be entitled.

The relevant parcels of land are shown on the rough sketch attached hereto. Tract A is owned by the McCreerys, who live in the dwelling thereon. Tracts B and C are owned by Chesapeake. Tract C-1 is the five-acre parcel in which the McCreerys have an 80 percent interest. The roadway in controversy, designated as Roadway #2 on the sketch, was constructed by the McCreerys from Tract A across

the northern portion of Tract B to Tract C-1, to give the McCreerys access to Route 155 (Old Route 608).

The record shows that in 1889 Joseph H. Harden acquired a tract of 110.65 acres, comprising the parcels designated on the sketch as Tracts A, B, C, and C-1. In 1893 he conveyed 30 acres, designated on the sketch as Tract A, to Hezekiah Harden, Jr., together with "one half of the Dwelling house". Hezekiah Harden, Jr., died intestate in 1912. In 1914 Joseph H. Harden conveyed 47.40 acres, designated on the sketch as Tract B, to John W. Harden and Willie E. Harden, by deed containing the following language:

> The said party of the first part also grants unto the said parties of the second part the right of way over the tract of land formerly owned by Kiah Harden, dec'd.
>
> And the said party of the first part reserves unto himself, his heirs and assigns the right, privilege and authority to use a road through the tract of land hereby conveyed as an outlet from his property to the county road.

A plat, attached to the deed, showed "Joe Harden's land" (Tracts C and C-1) on the west side and "Mrs. Harden's Land" (Tract A) on the east side of the parcel conveyed.

After the conveyance of Tracts A and B, Joseph Harden retained title to Tracts C and C-1 and his interest in the dwelling on Tract A. At that time, Route 608 did not exist, and he had no interest in any land between Tracts C and C-1 and the county road known as Route 413.

The chancellor found from the evidence that Joseph Harden lived with Hezekiah Harden, Jr., and his family on Tract A until 1936; that the family during this period principally utilized Route 212, the county road on the east, until it was abandoned in 1932 or 1933 and Route 608, now Route 155, was opened on the west; and that thereafter the Hardens used the route to the northwest designated on the plat as "Roadway #1" as their means of access from Tract A to Route 608. The chancellor found that the family and visitors, "on occasion" prior to the opening of Route 608, used a way or track which ran from Tract C across the lands of others to Route 413 on the west, but that there was no evidence of any easement of right over these lands.

The evidence is uncontradicted that in condemnation proceedings completed in 1968 the State Highway Commissioner (now the State Highway and Transportation Commissioner) acquired portions of Tract A and of Roadway #1 for the construction of Interstate High-

way 64, thereby denying the McCreerys the use of Roadway #1. The McCreerys were awarded damages on the basis of the residue of Tract A being landlocked by the acquisition. There was evidence that in 1970 the McCreerys were advised that they had a right-of-way over Tract B, and they constructed thereon the roadway in controversy.

By deed dated April 29, 1930, Joseph H. Harden conveyed to Chesapeake the residue of his land, containing 28.25 acres (Tract C), being 33.25 acres less the five acres designated as Tract C-1 which were reserved to the grantor and his successors. The location of Tract C-1 was established in *Chesapeake Corp.* v. *McCreery, supra.* References were made in the opinion in that case to the existence of the roadway now in dispute, but such references were made only to further the purpose of locating the five-acre parcel, and not to determine whether the McCreerys had the right to construct and use the roadway across Chesapeake's land, the issue in the present case. Hence, the issues in the two cases are entirely different and any language in the earlier opinion in respect to the roadway must be read in the strictly limited, descriptive context in which it was used.

The chancellor construed the language of the 1914 deed, which he considered to be the "key instrument" in resolving the controversy, to mean that Joseph H. Harden intended to reserve a right-of-way from Tract C (including C-1) over Tract B to Route 212. He noted that in stating the purpose of the easement to serve "as an outlet from his property to the county road", the grantor used the singular rather than the plural number to describe the land to be served and the road to which access was afforded. The McCreerys argue that the term "his property" included Joseph H. Harden's interest in Tract A as well as Tracts C and C-1, and that "the county road" meant either Route 212 to the east or Route 413 to the west. We disagree.

The 1914 deed also purported to convey to the grantees an express easement of right-of-way over Tract A, which was bounded by Route 212. Although Joseph H. Harden had conveyed that land to Hezekiah Harden, Jr., in 1893, subject only to reservation of an undivided one-half interest in the dwelling, the obvious intent of the grantor was to grant an easement of right-of-way from Tract B across Tract A to Route 212. Whether the grantor could legally grant such an easement is of no concern to us, for his right to do so is not in issue. The chancellor concluded that the grant supplied additional evidence that the grantor intended to reserve to himself and his successors an easement across Tract B to connect with the roadway extending across Tract A to Route 212 on the east.

Moreover, the plat recorded with the 1914 deed showed Joseph

Harden's land, comprising the parcels now designated as Tracts C and C-1, lying on the west side of Tract B and Mrs. Harden's land, now designated as Tract A, lying on the east side of Tract B. This is further evidence that "his property" meant only Joseph Harden's land west of Tract B. The evidence discloses that there was no easement of record for the benefit of any of the Harden lands over the lands of others lying between Tracts C and C-1 and Route 413. This evidence also supports the conclusion that the easement over Tract B was for the sole purpose of providing access to Route 212.

■ The McCreerys argue that it should not be presumed that Joseph H. Harden in 1914 intended to reserve an easement of right-of-way to only one public road, Route 212, because this would mean that he intended his successors in title to be landlocked if that road was subsequently abandoned. But, as Harden had no legal access to any county road but Route 212, he could only protect the means of ingress and egress legally available to him. He could not anticipate the abandonment of Route 212, the opening of Route 608, or the construction of Interstate 64. He could only prevent his property from being landlocked under the circumstances existing in 1914, leaving it to his successors to protect themselves under changing conditions.

■ By deed dated August 10, 1934, John W. Harden and Willie E. Harden conveyed Tract B to R. W. Taylor. The following language, to which the McCreerys attach great significance, is included in the deed:

> The deed conveying the above mentioned tract of land to the parties of the first part herein from Joseph H. Harden reserves unto the said Joseph H. Harden, his heirs and assigns the right, privilege and authority to use a road through the tract of land hereby conveyed as an outlet from his property to the county road.

R. W. Taylor conveyed Tract B to Chesapeake by deed dated October 25, 1935, which contains the following language upon which the McCreerys rely:

> The Deed conveying the above mentioned tract of land to the party of the first part herein from John W. Harden (Single) and Willie E. Harden (Single) reserves unto the said John W. Harden (Single) and Willie E. Harden (Single), his heirs and assigns the right, privilege and authority to use a road through the tract of land hereby conveyed as an outlet from their property to the county road.

The McCreerys argue that the 1934 and 1935 deeds reserved to them the easement which they claim over Tract B to Route 155, because Route 212 had been closed prior to execution of those deeds and it would have been a meaningless gesture for the grantors to specify a right-of-way to an abandoned public road. However, as the chancellor observed in his memorandum of opinion, the language relied upon by the McCreery's was a mere recital of encumbrances existing in the chain of title.

The 1934 deed made the factually correct statement that in the deed from Joseph H. Harden to John W. Harden and Willie E. Harden a right-of-way had been reserved to Joseph H. Harden and his successors across Tract B to the county road. Nothing was added to or subtracted from the reservation of easement set forth in the 1914 deed. The 1935 deed, however, incorrectly stated that in the deed from John W. Harden and Willie E. Harden to Taylor a right-of-way had been reserved to John W. Harden and Willie E. Harden and their successors across Tract B to the county road. There was no such reservation, of course, and the recital was no more than a confusing and inept effort to describe the right-of-way originally reserved in the 1914 deed and referred to in the 1934 deed. Neither the 1934 nor the 1935 deed purported to grant or reserve a new easement either to the McCreerys, who, though assigns of Joseph H. Harden, were not parties to those deeds, or to any other landowner. We hold that the chancellor correctly ruled that the 1914 deed was controlling and that the reservation of easement therein provided was not affected by the recitals in the 1934 and 1935 deeds.

The chancellor found from the evidence that after the closing of Route 212 a new public road, Route 608, was opened which cut through Tract C (including Tract C-1) and served as the outlet for that land. Proceeding from this factual determination, the chancellor correctly ruled that the purpose for which the easement across Tract B had been created no longer existed, and that the easement was extinguished. He relied upon *American Oil Company* v. *Leaman,* 199 Va. 637, 101 S.E.2d 540 (1958), where we held that when a public road to which an easement gave access was closed, the easement was extinguished by cessation of the purpose for which it was granted. *See* 1 Minor on Real Property §§ 106-107 (2d ed. F. Ribble 1928).

The chancellor's rulings, based upon his construction of the three deeds upon which the McCreerys rely, were amply supported by the evidence, and will not be disturbed. *See Alls* v. *Alls,* 216 Va. 13, 14-15, 216 S.E.2d 16, 17 (1975).

*Affirmed.*

A - M<sup>C</sup>CREERY 30 acres
B - CHESAPEAKE 47.40 acres
C - CHESAPEAKE 28.25 acres
C-1 — M<sup>C</sup>CREERY 80% interest in
5 acre tract