## CIRCUIT COURT OF FAIRFAX COUNTY

Miller & Smith, Inc., et al.

v.

Lucy B. Thompson et al.

### October 16, 1986

### Case No. (Chancery) 97549

## By JUDGE THOMAS A. FORTKORT

The case before us involves the plaintiffs' Motion for Summary Judgment. The facts necessary to understand the Plaintiffs' Motion are recited herein.

Miller and Smith, Inc., contracted with Lucy B. Thompson to buy 5.0130 acres of land for $521,352. Other provisions in the contract of sale provided for higher payments to Mrs. Thompson if higher land usage was obtained through the rezoning process.

Mrs. Thompson received a deed to the land many years ago. In that deed the grantor attempted to place a right of first refusal in favor of Mrs. Thompson's children.

After discovery of this language in the deed, and pursuant to the contract of sale between them, Miller and Smith notified Mrs. Thompson of this cloud on her ability to pass title free and clear to Miller and Smith.

Thereafter, Mrs. Thompson, through her attorneys in fact, offered the land to her children on terms different than, and perhaps more favorable, than the Miller and Smith offer.

Alfred Thompson, one of her sons, accepted the offer and demanded immediate conveyance of the property. On July 1, 1986, Miller and Smith sought and obtained a temporary injunction against this sale and later filed a Motion for Summary Judgment to declare the reservation of the right of first refusal in the deed, to be null and void.

In their Motion for Summary Judgment, Miller and Smith raise five issues: 1) Are the terms of the reservation of right too indefinite to be enforced? 2) Can Mrs. Thompson offer the land to her children on more favorable terms? 3) Was the offer by Mrs. Thompson's attorneys in fact and the acceptance by Alfred Thompson too indefinite to form a contract of sale? 4) How may the land be offered to or divided among the four children who may have accepted the offer and 5) Whether the reservation of the right of first refusal could be made by the grantor in favor of Lucy's children who are strangers to the deed?

The Court will address each of these issues in reverse order.

### Strangers to the Deed

Under Section 1-10 of the 1950 Code of Virginia as amended, Courts in this Commonwealth are to follow the common law of England insofar as it is not repugnant to the principles of the Bill of Rights and the Constitution of this State, and shall be the rule of decision except as altered by the General Assembly.

In the recent case of *Weishaupt* v. *Commonwealth*, 227 Va. 389 (1984), the Court discussed Section 1-10 in light of an earlier decision (*See Foster* v. *Commonwealth*, 96 Va. 306 (1898)) considering a predecessor statute to 1-10. Section 1-10 appears to be an adoption of the English Common Law generally and without a qualification. Our Supreme Court in rejecting that argument states the rule in these words:

> Such of the [English Common Law] doctrines and principles as are repugnant to the nature and character of our political system, or which the different and varied circumstances of our country render inapplicable to us, are either not in force here or must be so modified in their application as to adapt them to our condition. (*Weishaupt* 227 Va. at page 400).

To our knowledge the common law rule rendering reservations to a stranger to the deed ineffective has not been the subject of litigation before our Supreme Court. Thus, Section 1-10 must be seriously dealt with if a court

determines to set aside common law precedents, and the court must find that such precedent is no longer applicable to current circumstances.

At common law, a reservation could not be made for the benefit of a third party who was not a part of the transaction. The early rule was followed in several jurisdictions which held that the reservation was ineffective to grant an interest to a stranger to a deed, the grantee's rights were not qualified or affected by it, and he may disregard the reservation for all purposes. *See* 23 Am. Jur. 2d, *Deeds*, Section 84 (1983).

The early common law rule has come under much criticism by commentators and few states currently follow that rule. Virginia has not yet ruled on "strangers to a deed" although West Virginia follows the common law in that regard.

The Court's determination of the rule's applicability necessarily involves a balancing of equitable and policy considerations. In this context, the Court weighs the resulting injustice from refusing to give effect to reliance on the common law rule and the policy against disturbing settled title. When weighing the claim of reliance on common law precedence, courts give consideration to exceptions created by the judiciary as well as to partial abrogation of the rule by Virginia statute.

Under Virginia law it is well settled that the court's primary objective in construing a deed is to attempt to effectuate the grantor's intent. *E.g., Allen v. Green,* 229 Va. 588 (1985), citing *Austin v. Dobbins,* 219 Va. 33 (1979); *Chesapeake Corporation of Virginia v. McCrerry,* 216 Va. 33 (1975), *aff'd,* 220 Va. 227 (1979); *Arbern Realty Company, Inc. v. Swincewood,* 201 Va. 30 (1959); *Fitzgerald v. Fitzgerald,* 194 Va. 925 (1953). Generally, therefore, the Court must interpret grants in the same fashion as contracts and not according to rigid feudal standards. *Belvin's Executor, et al. v. Belvins, et al.,* 167 Va. 355 (1937); *State v. Bumgardner,* 89 Va. 418 (1892).

Va. Code Section 55-22 provides that a "present interest in or for the benefit of a condition respecting any estate[,] may be taken by a person under an instrument, although he be not a party thereto." *See Willard v. First Church of Christ Scientist, Pacifica,* 102 Cal. Rptr. 739 (1972) (upheld deed based on substantially similar statutory language despite common law challenge).

Several courts have also viewed that the common law rule is so diminished by exception as to question the rule's present viability. *Mott* v. *Stanlake*, 63 Mich. App. 440, 234 N.W.2d 667 (1975).

It is the Court's opinion that the common law rule of "stranger to the deed" is no longer relevant since its application would frustrate the grantor's intent. The Thompson deed attempts to protect the beneficiary children's interest at every turn, providing for a right of first refusal prior to any sale or attempt at sale of the land by Mrs. Thompson. Applying the common law and invalidating the provision because it violates the "stranger to the deed" rule would deprive the intended beneficiaries of their rights contrary to statutory intent.

By giving effect to the common law rule we would be rejecting Virginia's long line of cases upholding the grantor's intent, and our statutory policy of protecting beneficiaries to a deed. The Virginia experience, as is true with the vast majority of other jurisdictions in this country, rejects application of this common law principle, as contrary to our current circumstances and condition. Accordingly, Plaintiffs' case on this position must fail.

*How may the land be divided among the four children who may have accepted the offer?*

Assuming that a valid contract exists between Mrs. Thompson and her children, the question of how the property is to be divided is not subject to summary judgment nor does Miller and Smith have standing to raise this issue.

*Was the offer by Mrs. Thompson and the acceptance by Alfred Thompson too indefinite to form a contract of sale?*

The terms of the contract include a down payment, a total price and a period after which the purchase price is due. Presumably, the parties know the property being offered for sale. The terms are sketchy but capable of reasonable interpretation and are sufficient to form a valid contract.

*Are the terms of the reservation of right too indefinite to be enforced?*

The answer to this question revolves around the court's interpretation of two key Virginia cases, *i.e.*, *Rolf* v. *Mason*, 202 Va. 690 (1961), and *Parker* v. *Murphy*, 152 Va. 173 (1929).

In the earlier case of *Parker* v. *Murphy*, the seller reserved the right of first refusal "on terms to be agreed upon at the time such agreement is made." Parker agreed to purchase the property from Hopkins from whom Murphy had received a right of first refusal. Murphy after discovering the sale from Hopkins to Parker offered to purchase the land on the same terms as Parker had offered. Parker demanded Hopkins convey the land to him and Murphy demanded specific performance.

The Court granted specific performance finding "the price was fixed according to the mode prescribed by the written contract, that is, by agreement of the parties." When the Hopkins were willing to accept the price offered by Parker for the property and Murphy desired to buy it at the price offered by Parker the provision "on terms to be agreed upon at the time such agreement is made" became definite and the contract became complete as if the price had been stated in the contract, and that the contract was specifically enforceable by Murphy because he had "first privilege" to buy the property.

While the reasoning in *Parker* appears to be a tortuous method for creating a contract, it does follow prior case precedent. Prior cases which refused to enforce bare rights of first refusal did so on the grounds that the right did not provide a price or provide a method for ascertaining it. *See Fogg* v. *Price*, 145 Mass. 513, 14 N.E. 741 (1888); *Folsom* v. *Harr*, 218 Ill. 368, 75 N.E. 987 (1905); *Wolfe* v. *Lodge*, 159 Iowa 162, 140 N.W. 429 (1913). The Virginia case of *Rolf* v. *Mason, supra*, also refused to specifically enforce a right of first refusal because it did not provide a mode where the price could be fixed with certainty.

It is important to remember that in every case cited above, there existed a third party contract for the sale of the land. Thus, the existence of an offer which could be met by the grantee of the right of first refusal is not by itself sufficient to establish a purchase price

whereby the right of first refusal can become a contract between the parties. Rather, there must be some additional language in the original grant which sets a mode by which a price can be established. The words "on terms to be agreed upon at the time such agreement is made" do not seem to establish a mechanism for determining price.

Rather, what that clause does is to convey the purchaser's willingness to convey the property back to the seller at such future time as the purchaser is willing to sell. The willingness to sell becomes manifest upon his offer to a third party and the price is established by that offer.

In the case at bar, Lucy may only sell the property after first offering the property to her children who must respond within 30 days of that offer. If the children do not accept that offer then Lucy may offer and sell the property on the same terms to a stranger.

If after Lucy's offer to the children is declined and she agrees to different terms with a prospective purchaser, she must once again offer the land to her children on these new terms.

There is no doubt that this mechanism meets the test in *Parker* and *Rolfs* and that there is an enforceable right of first refusal in this case which leads us to one final inquiry.

*May Lucy Thompson offer the land to her children on more favorable terms than those which she agreed to sell to Miller and Smith?*

The case at bar is novel in the sense that the mechanism required by the deed prohibits Lucy Thompson from "attempting to sell the land" to any one other than her children without first offering the land to them.

In almost every other case, the proposed sale to a third party provided a way to set the price of the property. The Court presumed or at least was not concerned as to the fairness of the bargain. The setting of the price was for the purpose of providing certainty to the contract not to protect any particular party.

In the case at bar, Lucy Thompson cannot offer the property to others without *first* offering the property to her children. She may offer the property to her children at any price and after rejection by them, may offer the land at that same price to whoever wished to buy it.

The purpose of providing the children with a price is to place them on notice that Mrs. Thompson is willing to sell the land. If the children accept her price, a full contract comes into being. If they reject her price, but she offers the land to others on different terms, her children retain the right to meet these new terms. If the children meet the new price, an enforceable contract would ensue under the generally accepted case law governing rights of first refusal which this opinion previously addressed.

There can be no other meaning to the language in Lucy Thompson's deed that the grantor intended that as a condition precedent to her right to alienate the property, she must first offer the property to her children at whatever price she chooses. By the terms of her deed, her offer to sell the property to Miller and Smith is a nullity. Her offer at a lower price or more favorable terms to her children meets her obligations under the deed and since she has made no prior offer to sell to her children, she is not required to offer the land to them on the same terms as her contract with Miller and Smith.

For all of the foregoing reasons, the motion for summary judgment is denied.