# CIRCUIT COURT OF GREENE COUNTY

Thomas Doyle

   v.

Wiendieck

August 31, 2006

Case No. (Chancery) 04-81

BY JUDGE DANIEL R. BOUTON

*Procedural Background*

    The case was tried ore tenus on May 8th and May 9th. After all of the evidence was presented, the court directed counsel to submit written arguments in support of their respective positions. At trial, many facts were hotly contested. Several complex legal issues were raised, thoroughly argued, and skillfully briefed. The court has fully considered and studied the record of the proceedings. The court has also reviewed the written arguments and the authorities relied upon by counsel.

    It is not necessary to address and resolve every aspect of the dispute between the parties. The court finds that the property description set forth in Complainant's Exhibit # 4 does not sufficiently describe or provide the means to identify the tract of land that Doyle claims was conveyed to him by the deed. The court further finds that the extrinsic evidence that was introduced to supplement the language of the deed does not provide any additional evidence that leads the court to conclude that Doyle is entitled to any relief. Therefore, the bill of complaint will be dismissed. The reasoning of the court is set forth below.

*Discussion of the Property Description Issue*

With regard to the sufficiency of the property description, the court finds that several of the principles enunciated in Wiendieck's reply memorandum have relevance to the resolution of the issue. Here, the court notes and incorporates by reference the cases cited and argued by Wiendieck in her reply memorandum on pages 12-15. The opinion rendered by the Supreme Court of Virginia in *Harris v. Scott*, 179 Va. 102, 18 S.E.2d 305 (1941), contains an extensive discussion of the subject. There, in explaining how a trial judge must evaluate a property description in which a party claims title based on a deed, the court said:

> Generally, if the description of the land intended to be embraced and the title thereto conveyed by the deed is so indefinite or uncertain that it fails to designate or identify the land meant, the deed is inoperative; for a deed to be valid on its face requires not only a grantor and a grantee, but also a thing granted, and if the description is too indefinite to convey anything, then the paper on its face lacks one of the essential elements of a conveyance, for it is essential to the validity of a grant that the thing granted should be so described as to be capable of being distinguished from other things of the same kind. Hence, a deed which conveys no particular spot of ground can transfer no title. So, where a line only is given, no land being included, the deed is a nullity, inasmuch as nothing is granted, or where two lines are given, with nothing to show what is embraced; and a grant cannot be located when described as beginning at a stake with nothing further to locate the stake, and the other corners are described as points at the end of course and distance, the same rule applying where no ending or starting point is named.

*Id.*, at 108-09.

The *Harris* court further stated that, when a "claimant of title relies upon a deed of conveyance, it is well settled both by reason and authority that, in order to be effective as evidence of title, it must either in terms or by reference to other designation give such description to the subject matter intended to be conveyed as will be sufficient to identify the same with reasonable certainty." *Id.*, at 109. Finally, the court explained the manner in which language regarding acreage should be interpreted: "In the description of land, it is usual after the description by metes and bounds or subdivisions, to

add a clause stating that the land described contains so many acres. . . . The mention of the quantity of land conveyed may aid in defining the premises, but it cannot control the rest of the description." *Id.*, at 110. The above principles make it clear that, under Virginia law, in order for a property description contained in a deed to be sufficient to transfer title, it must at a minimum at least provide the means by which the court can identify the tract of land being conveyed by the deed.

The court will now turn to the evidence contained in the record of the proceedings. The court will begin by addressing the quitclaim deed (Complainant's Exhibit # 4) that is the subject of dispute between the parties. The item in question is a "form document" that was obtained and used by Wiendieck. The writing on the exhibit consists of several paragraphs and clauses that were preprinted on the form when it was acquired by Wiendieck, as well as some additional language that was inserted by her before it was given to Doyle. The pertinent language was typed on a blank space on the front page of the form, and it was placed in the space that was specifically earmarked for the property description of the land that Doyle claims he acquired by the deed. The language of description before the court is as follows: "The parcel of land being deeded to Thomas Doyle encompasses the fenced area surrounding Mr. Doyle's mobile home and outbuildings." (Complainant's Exhibit # 4.)

Two questions will be separately analyzed and resolved with respect to Complainant's Exhibit # 4. The first one is the construction and interpretation of the above language. The second question pertains to the extrinsic evidence that was presented regarding the identification of the property conveyed by the deed. For the reasons articulated below, the court rejects Doyle's position on both the language of the deed and the extrinsic evidence.

With respect to the language itself, it is first important to note that Doyle concedes that the description contained in the deed is not sufficient. (Plaintiff's Memorandum, pp. 20-23.) In his written argument on this issue, he summarizes and makes reference to a large quantity of extrinsic evidence that he asserts would allow the court to find that the tract of land he asks the court to quiet title to is the tract that was conveyed to him by the quitclaim deed. Citing portions of the testimony that was given by a number of witnesses who appeared at trial, Doyle maintains that this "evidence is enough for the court to make certain the boundaries of the property identified in the deed." (Plaintiff's Memorandum, p. 22.) Thus, Doyle makes no argument that the deed contains either a sufficient property description or enough information that would allow the disputed tract of land to be identified. However, even though Doyle acknowledges that the written description in the deed is not adequate, it is still

necessary for the court to evaluate the language itself before examining the extrinsic evidence. This is important because for Doyle to prevail, the court must accept both his interpretation of the property description language in the deed and his argument that the extrinsic evidence in the case provides the means to identify the tract of land that he claims was actually conveyed to him by the quitclaim deed.

Turning now to the language, the clause "encompasses the fenced area surrounding" means that any property being described in the deed might include some land on the property in this general location. This language, however, does not refer to nor does it list any boundaries of the parcel. In particular, no fence is identified as a boundary line. The language does not mention any specific dimensions. It does not state the starting point or the ending point of any property description. Also, the description provides no means by which the size of the tract or the quantity of land being transferred can be determined. There is not even an estimate of the size of the parcel.

An additional problem with the language of the description relates to Doyle's argument that the court should quiet title to a tract of land that has as its front boundary the public road. In his opening statement and in his closing argument, Doyle asserts that the tract conveyed to him in the quitclaim deed includes at least some land that lies within the area between the road and Doyle's mobile home. Nowhere in the property description, however, is any road identified, described, or even mentioned. In the court's view, it is simply not possible to read the language of the property description contained in the deed and conclude that the tract of land being conveyed by such deed extends out to the public road. The court finds no language, clause, or word in the written description that would identify the road as a boundary or that would even suggest that the land conveyed by the deed extended out to the road. Wiendieck vigorously argued this point both at trial and in her written submissions. The court adopts as part of the rationale for its ruling the arguments set forth on pages 26-27 of her post trial memorandum. The significance of this point is that the only way in which the court can consider the road as a boundary line is through the extrinsic evidence in the case.

For the reasons discussed above, the court concludes that the language of the quitclaim deed fails to describe or provide the means to identify the tract of land purportedly conveyed by the deed. No dimensions or boundaries are included in the description, nor can they be identified simply because there is a statement that the property "encompasses" a certain area. The description provides no amount of acreage and no estimate of the size of the tract. Finally, nothing in the description allows the court to identify the road as the front boundary.

Having analyzed why the language of the description is inadequate, the court will next turn to the extrinsic evidence in the case. As noted previously, Doyle relies heavily on this evidence to establish the identity of the land that he believes was acquired by him under the quitclaim deed. In the court's view, however, none of the extrinsic evidence elicited at trial regarding the circumstances surrounding the preparation and delivery of Complainant's Exhibit # 4 furnishes the court with sufficient means to identify the land that Doyle asserts was transferred to him by the deed. There are a number of reasons why the court reaches this conclusion.

First, regardless of whether it can be argued that Wiendieck generally intended to convey property to Doyle, there is no evidence that she intended that the quitclaim deed convey to him the tract of land that he claims he acquired when Wiendieck gave him the document. Wiendieck never testified that she knew the location of the boundaries or the precise dimensions of any property that was to be owned by Doyle. Before and after the delivery of Complainant's Exhibit # 4, Wiendieck and Doyle agree that there were some general conversations about a tract of land that would include Doyle's mobile home. They also agree that there was some mention of an estimate of two acres. However, Doyle concedes that, at the time of the delivery of the quitclaim deed and at all times thereafter, there was never any agreement about the boundaries or dimensions of any tract of land that was to be owned by him. Doyle even admitted that he understood and expected that the two acres that he was to receive from Wiendieck would include a septic system that was located somewhere beyond the fences that surrounded his mobile home and that could not be found in the area of the property referred to in the quitclaim deed. (Tr. pp. 65-66.) He admits that, at the time the quitclaim deed was given to him, Wiendieck said nothing that would allow for a precise identification of the land allegedly conveyed by the deed. In responding to a question regarding whether Wiendieck made any statement to him about the size or shape of the land when the quitclaim deed was delivered, Doyle responded: "She said we would discuss later the exact dimensions, because she wanted to take in the septic field which was to the left of the house." (Tr. p. 65.)

Furthermore, in arguing that the extrinsic evidence supports his position, Doyle asks the court to distinguish between the property that was conveyed to him by the deed and the additional property that he expected to receive from Wiendieck at some point in the future. Doyle's testimony at trial, however, regarding the property that he claims based on the deed was confusing and inconsistent. In court, he stated that he became the owner of certain property when Wiendieck gave him the quitclaim deed. Yet, he also

said that he expected to receive additional land in the future so that he would ultimately own two acres. With the second conveyance, Doyle anticipated that a survey would also be prepared. At one point, he also said that the deed conveyed to him the "land between the fences and the road around my home." (Tr. p. 63.) Later, he stated that, based on the deed, "I already had the land between the fences, but I wasn't opposed to discussing moving it a little either way so we could make the two acres work. . . ." (Tr. p. 68.) Doyle's interpretation of what property he acquired by the quitclaim deed is not dispositive; nevertheless, his testimony on this subject does not support his position about the use of the extrinsic evidence in the case because he was never clear about what land he actually got by the deed and what land he would get with the second conveyance. In particular, he provided no testimony that persuades the court that Wiendieck made any statements to him that would justify a finding that the extrinsic evidence, combined with the language of the property description, is sufficient to describe or identify the tract of land that Doyle claims was transferred to him with the delivery of the quitclaim deed. The court also finds that Wiendieck offered no testimony, either on direct or cross-examination, that would support such a finding.

A final reason why the extrinsic evidence fails to support Doyle's position is that the evidence about the property itself is actually at odds with the description contained in the deed. As noted previously, the deed refers to "the fenced area surrounding Mr. Doyle's mobile home and outbuildings." In my view, the word "fenced" is especially significant. An area of property that is fenced can be identified and located because it is separated or closed off by fences on all sides. This is precisely why such property is often described as fenced in a deed; it is also why this term can in some cases aid in the identification of land described in a deed. It is also why extrinsic evidence regarding the location of fences may arguably be considered to help establish what land is actually being conveyed in a deed and to determine how much land is included in the conveyance.

There is a distinction, however, between property on which fences can be found and property that can be correctly described as including a fenced area. In the present case, the extrinsic evidence proves that some fences were situated on the disputed property when the quitclaim deed was prepared and signed. Nonetheless, the evidence proves conclusively that no "fenced area" existed at that time. Thus, the extrinsic evidence regarding the fences on the property contradicts the manner in which the fences are described in the deed. Since no fenced area was on the land, the extrinsic evidence concerning the fences does not support Doyle's argument.

The court's discussion of the extrinsic evidence is consistent with the arguments made by Wiendieck in Section II D of her post trial memorandum (pp. 24-26) and in Section III C (pp. 12-15) of her reply memorandum. As stressed in Wiendieck's arguments, Doyle asserts that the portion of the property that lies between the fences and the road was conveyed to him by the deed. As noted previously by the court, there is nothing in the language of the deed that supports this conclusion. Therefore, in order to rule in favor of Doyle, the court would have to find that the extrinsic evidence, coupled with the property description in the deed, justifies the establishment of the road as a boundary line. Yet, in order to include the property that fronts on the road, the court would first have to ascertain the point where the fence stops on each side of the property. The court would then have to rule that, from each such point, a line that extends each side boundary from the fence out to the road must be established to complete the identification of the property claimed by Doyle. Whether the side boundary lines from the fence to the road should be straight or at an angle cannot be determined because the court does not know whether the fences on the property are at an angle or perpendicular to the road. In any event, no evidence in the record persuades the court that the deed conveyed to Doyle any land that extends out to the road.

In conclusion, based on a review of all of the evidence in the record regarding the identification of the tract that Doyle claims was conveyed to him by the deed, the court finds that such evidence is not sufficient to vest in him the title to such property. As discussed in *Harris, supra,* nothing in the language of the property description or the extrinsic evidence on this point allows the court to distinguish the tract of land described in the deed from the rest of Wiendieck's property. There is nothing in the record from which the court can make a reasonable identification of "a particular spot of ground" conveyed by the deed. There is no ending point or starting point for a property description. No boundaries are identified and the amount of land is not mentioned. While the document makes reference to a grantor and a grantee, the description of the property is too indefinite to establish "a thing granted."

For the reasons set forth above, the bill of complaint will be dismissed.